# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 22, 2010 Session

## GREGORY POOLE v. UNION PLANTERS BANK, N.A.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-05-0915-2      Arnold B. Goldin, Chancellor

---

### No. W2009-01507-COA-R3-CV - Filed April 8, 2010

---

The plaintiff/appellant, an owner-operator truck driver, entered into a note, disclosure, and security agreement with the defendant/appellee, Union Planters Bank, for the purchase of a tractor-trailer truck.  At the time of the original agreement, the bank promised to have the vehicle's title converted to a Tennessee certificate of title.  The plaintiff filed suit several years later to recover damages incurred due to the bank's failure to timely provide a copy of said title.  Prior to trial, the bank moved to compel arbitration and to strike the plaintiff's jury demand based on contractual language found in the original agreement and a subsequent refinancing agreement.  The trial court declined to compel arbitration but granted the motion to strike.  At trial, the plaintiff recovered in breach of contract.  On appeal, the plaintiff challenges the enforcement of his pre-dispute contractual waiver of the right to trial by jury, the involuntary dismissal of his Tennessee Consumer Protection Act claim, the calculation of his damages, and the denial of his claim for prejudgment interest.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Brett A. Schubert, Memphis, Tennessee, for the appellant, Gregory Poole

Caren B. Nichol and Lewis Clayton Culpepper, III,  Memphis, Tennessee, for the appellee, Union Planters Bank, N.A.

**OPINION**

## I. Background and Procedural History

The plaintiff/appellant, Gregory Poole ("Mr. Poole"), is an owner-operator truck driver. In May 2000, Mr. Poole entered in a note, disclosure, and security agreement with Union Planters Bank ("the Bank") to facilitate the purchase of a 1998 Freightliner XL Classic Truck from Long-Lewis Sterling Ford in Bessemer, Alabama.[1] Pursuant to the agreement, the Bank provided Mr. Poole with $62,014 for the purchase of the vehicle, which he agreed to repay with interest over sixty months. The agreement did not set forth any specific obligations with respect to the transfer of the vehicle's title from Alabama to Tennessee. Lue Young ("Ms. Young"), manager of the Bank's Southgate Branch located on South Third Street in Memphis, nevertheless agreed to "take care" of the matter for Mr. Poole at the time of the original loan.[2]

The transfer of title was important to Mr. Poole because he needed a copy of the vehicle's Tennessee certificate of title to renew his tags on a yearly basis. Unfortunately, the Bank lost the vehicle's Alabama certificate of title before it could be transferred. The Bank, as a result, was unable to provide Mr. Poole with a copy of Tennessee title for a period of years, which nonetheless did not prevent Mr. Poole from persuading state workers to renew his tags on multiple occasions. Their leniency, however, eventually wore thin and Mr. Poole was not allowed to renew his tags in August 2004. Consequently, Mr. Poole could not lawfully operate his vehicle and was, in effect, temporarily put out of business beginning September 2004. The Bank, after substantial effort on its own part, was able to secure a duplicate of the vehicle's original Alabama certificate of title, transfer the vehicle's title to Tennessee, and provide a copy of the vehicle's Tennessee certificate of title to Mr. Poole in early December 2004. Mr. Poole renewed his tags and resumed operation within a matter of days.

_____

[1]Union Planters Bank has since merged with Regions Financial Corporation.

[2]It is not entirely clear whether the Bank was under an obligation to transfer title absent the commitment of Ms. Young. The trial testimony suggests that the Bank had neither the responsibility nor the power to have title transferred. Rudy Walker ("Mr. Walker"), Senior Vice President and Consumer Sales Manager with Regions Bank, testified that the dealership customarily perfects the Bank's lien and mails the paperwork, including a certificate of title, to the proper state agency in Tennessee. The state agency then sends a Tennessee certificate of title directly to the Bank, where it is to be kept as collateral. Mr. Walker testified that the Bank would need a power of attorney from Mr. Poole, which it did not have initially, to transfer title from Alabama to Tennessee. Ms. Young, on the other hand, testified that the Bank typically would send the paperwork along with the loan documents to the proper state agency. But it is not clear whether her testimony refers to the Bank's normal procedure when dealing with an existing Tennessee certificate of title or the Bank's procedure when it must transfer title from another state. In either event, Mr. Walker testified that Ms. Young's description of the Bank's normal operating procedure was incorrect.

Mr. Poole filed this suit to recover damages for the period of time he could not lawfully conduct his business due to the Bank's failure to transfer title. His complaint alleged breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and violation of the Tennessee Consumer Protection Act of 1977 ("TCPA"). The complaint demanded a jury trial on all issues and sought multiple remedies including compensatory damages, consequential damages, lost wages, rescission, treble damages, prejudgment interest, and attorney's fees. In its answer, the Bank denied Mr. Poole's claims and set forth several affirmative defenses. The Bank's answer did not mention waiver of the right to trial by jury, which it raised nearly four years after the commencement of suit in a motion to compel arbitration or, in the alternative, to strike the plaintiff's jury demand. The trial court denied the Bank's motion to compel arbitration but granted its motion to strike Mr. Poole's jury demand. Shortly thereafter, the court granted summary judgment in favor of the Bank on all claims except Mr. Poole's claims for breach of contract and violation of the TCPA.

The parties proceeded to trial in June 2009. At the close of the plaintiff's proof, the Bank moved to involuntarily dismiss the alleged violation of the TCPA. The court concluded after considerable argument that Mr. Poole's claim did not arise in the context of commerce or a consumer transaction and granted dismissal. As the trial proceeded, however, it became evident that the Bank had breached the contract between it and Mr. Poole.[3] Accordingly, the court found in favor of Mr. Poole, awarded him $6,566 in damages for the three-month period he was unable to operate, but denied his request for prejudgment interest. The chancellor incorporated his oral ruling into a final order and Mr. Poole appealed.

## II. Issues Presented

Mr. Poole presents the following issues for our consideration on appeal:

(1)  Whether the trial court erred when it granted the Bank's motion to strike his jury demand;

(2)  Whether the trial court erred when it dismissed his Tennessee Consumer Protection Act claim;

(3)  Whether the trial court erred when it calculated damages based on the monthly average net profit of his business;

---

[3]The Bank does not appeal the court's finding of breach of contract.

(4)     Whether the trial court erred when it declined to award prejudgment interest on his breach of contract claim.

## III. Standard of Review

This Court reviews the judgment of a trial court in a bench trial *de novo* upon the record, according a presumption of correctness to the factual findings of the court below. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citation omitted). We will not disturb a trial court's findings of fact unless a preponderance of the evidence is to the contrary. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000) (citation omitted). Our review is *de novo* with no presumption of correctness if the trial court does not produce findings of fact. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995) (citations omitted). Questions of law are similarly reviewed *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citation omitted).

## IV. Analysis

### A. Jury Waiver

This appeal presents an issue of first impression in Tennessee concerning the permissibility of pre-dispute contractual waiver of the right to trial by jury in civil cases, absent an enforceable arbitration agreement.[4] Two jurisdictions have interpreted their state constitutions to prohibit pre-dispute contractual waiver of the right to a civil jury trial – a position Mr. Poole now asks this Court to adopt. Our review of the relevant authority leads us to conclude that pre-dispute contractual waiver of the right to trial by jury is not prohibited in Tennessee. We leave for future consideration, however, additional issues of first impression concerning the principles courts should apply when determining the enforceability of particular provisions. We are satisfied that the evidence in the record supports enforcement of Mr. Poole's jury waiver under any standard, regardless of which party bears the initial and/or ultimate burden of proof. Because pre-dispute contractual jury

---

[4]This distinction is important. No question exists as to whether Tennessee litigants are permitted to forgo the judicial process altogether if they have entered into a valid, pre-dispute arbitration agreement. *See, e.g.*, *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876 (Tenn. 2007); *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996); *Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573 (Tenn. Ct. App. 2007). Arbitration agreements, however, are expressly authorized by statute. *See* Tenn. Code Ann. § 29-5-302(a) (2000). And the Tennessee Supreme Court has recognized that the public policy of this state promotes arbitration as an alternative to the adjudicative process. *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 617 (Tenn. 2004) ("In general, arbitration agreements in contracts are favored in Tennessee both by statute and existing case law."). Neither the legislature nor the judiciary has similarly endorsed the individual enforcement of a pre-dispute contractual jury-waiver provision to date.

waiver can be enforced upon motion at any time up to the eve of trial, the grant of the Bank's motion to strike Mr. Poole's jury demand is affirmed.

The threshold question before this Court is whether pre-dispute contractual jury waiver is permissible under Tennessee law. Article 1, Section 6 of the Tennessee Constitution states that "the right of trial by jury shall remain inviolate. . . ." Tenn. Const. art. 1, § 6. This constitutional guarantee has appeared in every version of our constitution and defends one of the most important personal rights found in the Tennessee Declaration of Rights. *Jones v. Greene*, 946 S.W.2d 817, 823 (Tenn. Ct. App. 1996) (citations omitted). As a general rule, however, one may waive a constitutional provision enacted for his personal benefit and protection if the waiver does not offend public policy. *State, Dep't of Highways v. Urban Estates, Inc.*, 465 S.W.2d 357, 360-61 (Tenn. 1971) (citing *State ex rel. Barnes v. Henderson*, 423 S.W.2d 479, 502 (Tenn. 1967)). Furthermore, prior decisions illustrate that waiver of the right to jury trial in civil cases is not wholly prohibited. *See, e.g.*, *Russell v. Hackett*, 230 S.W.2d 191, 192 (Tenn. 1950); *E. Tenn., V. & G. R. Co. v. Martin*, 2 S.W. 381, 382 (Tenn. 1886); *Nagarajan v. Terry*, 151 S.W.3d 166, 176 (Tenn. Ct. App. 2003); *Beal v. Doe*, 987 S.W.2d 41, 48-49 (Tenn. Ct. App. 1998); *Davis v. Ballard*, 946 S.W.2d 816, 817 (Tenn. Ct. App. 1996). The Tennessee Rules of Civil Procedure expressly provide for certain types of post-dispute jury waiver. *See* Tenn. R. Civ. P. 39.01(a). Tennessee courts, however, have not considered whether pre-dispute contractual waiver of the right to trial by jury, which is not expressly authorized by our constitution, statutes, or procedural rules, is permitted.

A majority of courts to address this issue have found no bar to the enforcement of pre-dispute jury-waiver provisions. *See, e.g.*, *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988), *cert. denied*, 490 U.S. 1021 (1989); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985); *In re S. Indus. Mech. Corp.*, 266 B.R. 827, 830 (W.D. Tenn. 2001); *Efficient Solutions, Inc. v. Meiners' Country Mart, Inc.*, 56 F. Supp. 2d 982, 983 (W.D. Tenn. 1999); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 133 (Tex. 2004); *Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Court*, 40 P.3d 405, 410 (Nev. 2002) (en banc); *L & R Realty v. Conn. Nat'l Bank*, 715 A.2d 748, 755 (Conn. 1998); *Azalea Drive-in Theater, Inc. v. Sargoy*, 214 S.E.2d 131, 136 (Va. 1975); *Gelco Corp. v. Campanile Motor Serv., Inc.*, 677 So.2d 952, 952 (Fla. Dist. Ct. App. 1996). The supreme courts of two states have nevertheless concluded that their state constitutions and statutes prohibit pre-dispute jury waiver. *See Grafton Partners L.P. v. Superior Court*, 116 P.3d 479, 492 (Cal. 2005); *Bank South, N.A. v. Howard*, 444 S.E.2d 799, 800 (Ga. 1994).

The Georgia Supreme Court in *Bank South, N.A. v. Howard*, 444 S.E.2d 799 (Ga. 1994), was the first court of last resort to render ineffectual a jury-waiver provision entered into before litigation was pending. The Georgia Constitution provides that the "right to trial by jury shall remain inviolate, except that the court shall render judgment without the verdict

of a jury in all civil cases where no issuable defense is filed and where a jury is not demanded in writing by either party." Ga. Const. art. 1, § 1, para. XI. Georgia Code Annotated section 9-11-39 adds that "parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, may consent to trial by the court sitting without a jury." Ga. Code Ann. § 9-11-39(a). The *Bank South* court concluded that these provisions, which it impliedly found were the only means of jury waiver authorized in Georgia, clearly contemplated pending litigation at the time of waiver. *Bank South*, 444 S.E.2d at 800. Thus, pre-dispute contractual jury waiver was not provided for and could not be enforced under Georgia law. *Id.*

The California Supreme Court reached a similar conclusion in *Grafton Partners L.P. v. Superior Court*, 116 P.3d 479 (Cal. 2005). The *Grafton* court first examined the means by which a litigant in California may waive the right to trial by jury. The California Constitution, similar to the Georgia Constitution, guarantees litigants an inviolate right to trial by jury in civil cases but differs in that it expressly provides for waiver by consent of the parties "*as prescribed by statute*." Cal. Const. art. 1, § 16 (emphasis added). The *Grafton* court interpreted this provision to prohibit non-statutory bases of jury waiver, concluding that section 631 of the California Code of Civil Procedure provided the sole means by which a party could waive the right to trial by jury.[5] *Grafton*, 116 P.3d at 485. The court went on to

---

[5]California Code of Civil Procedure section 631 provides, in pertinent part:

(a) The right to a trial by jury as declared by Section 16 of Article I of the California Constitution shall be preserved to the parties inviolate. In civil cases, a jury may only be waived pursuant to subdivision (d).

. . . .

(d) A party waives trial by jury in any of the following ways:

(1) By failing to appear at the trial.

(2) By written consent filed with the clerk or judge.

(3) By oral consent, in open court, entered in the minutes.

(4) By failing to announce that a jury is required, at the time the cause is first set for trial, if it is set upon notice or stipulation, or within five days after notice of setting if it is set without notice or stipulation.

(5) By failing to deposit with the clerk, or judge, advance jury fees as provided in subdivision (b).

(continued...)

-6-

determine that pre-dispute contractual waiver did not fall within the waiver authorized by the California Code. *Id.* at 488. The court held, similar to the Georgia Supreme Court, that the forms of waiver provided by statute required pending litigation. *Id.* at 487. Hence, pre-dispute contractual waiver of the right to trial by jury was inconsistent with California law and unenforceable. *Id.* at 492.

Mr. Poole would have this Court adopt a position similar to that of the supreme courts in Georgia and California, but the reasoning of these opinions is inapplicable in the present case. In the aforementioned cases, the determination not to uphold pre-dispute contractual waiver turned on the courts' constructions of their individual state constitutions and statutes, which either expressly or impliedly limited the means by which a party was allowed to waive the right to trial by jury. Our constitution does not forbid or limit waiver of the right to trial by jury in a civil case. Our legislature has not defined or limited the means by which a party may waive the right to trial by jury in a civil case. Our procedural rules, while specifically providing for post-dispute waiver by consent, neither endorse nor deny pre-dispute waiver in a civil case. *See* Tenn. R. Civ. P. 39.01. It is the opinion of this Court – consistent with the majority view – that Tennessee litigants are free to waive the constitutional right to a civil jury trial by prior written contractual agreement.

Our holding finds support in the principles governing the interpretation and enforcement of contracts in Tennessee. The Tennessee Supreme Court has explained that the right to contract or "freedom of contract" has historically ensured "'that parties to an agreement have the right and power to construct their own bargains.'" *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 892 (Tenn. 2002) (quoting Blake D. Morant, *Contracts Limiting Liability: A Paradox with Tacit Solutions*, 69 Tul. L. Rev. 715, 716 (1995)); *see also Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009) (citing Steven W. Feldman, *Tennessee Practice: Contract Law & Practice* § 1:6, at 17 (2006)) ("Contract law in Tennessee plainly reflects the public policy allowing competent parties to strike their own bargains."). Parties are free to bargain for and agree upon such terms as they see fit, even if the bargained-for agreement may seem undesirable to outside observers. *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 100 (Tenn. 1999) (citations omitted); *Chapman Drug Co. v. Chapman*, 341 S.W.2d 392, 398 (Tenn. 1960). Courts should, therefore, generally enforce the terms of a bargained-for agreement unless they violate public policy. *Guiliano*, 995 S.W.2d at 100 (citing *McKay v. Louisville & N. R. Co.*,

---

[5](...continued)
> (6) By failing to deposit with the clerk or judge, at the beginning of the second and each succeeding day's session, the sum provided in subdivision (c).

Cal. Civ. Proc. § 631.

182 S.W. 874, 875 (Tenn. 1916)). The same principles apply to contractual jury waivers. Thus, the decision to contractually waive the right to trial by jury is one that courts should respect unless the agreement violates public policy.

Public policy has, at times, prohibited parties from waiving personal rights in judicial proceedings, even if the parties have agreed to a particular course of action. *Team Design v. Gottlieb*, 104 S.W.3d 512, 526 (Tenn. Ct. App. 2002) (citing *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991) (Scalia, J., concurring)). This Court, for example, has recognized that litigants in this state are not permitted to waive "elemental, structural attributes of judicial proceedings." *Id.* (citing *New York v. Hill*, 528 U.S. 110, 116 (2000)). Parties cannot agree to allow a trial court to try a case without subject matter jurisdiction, to allow a general sessions court to adjudicate claims beyond its monetary limits, to permit a quotient or gambling verdict, to close a trial to the public or press absent an overriding interest, or to permit representation by a lawyer with an impermissible conflict of interest. *Id.* at 527 (footnotes omitted). "Even if both litigants not only agree to, but themselves propose, these or other similar procedures, the courts must tell them no." *Id*. We find no such limitation applicable to these proceedings.

As noted earlier, post-dispute waiver of the right to trial by jury is permitted in Tennessee. We see no reason why courts should decline, for policy reasons, to enforce a pre-dispute contractual waiver of the right to trial by jury while upholding implied post-dispute waivers. Surely, greater protections exist to prevent parties from unwittingly waiving their constitutional right in the former context. Furthermore, the enforcement of arbitration agreements, which is favored in Tennessee, involves waiver of an additional and arguably more consequential fundamental constitutional right: the right of access to the courts. It is not immediately apparent why public policy would prohibit pre-dispute contractual waiver of the right to trial by jury where the enforcement of pre-dispute agreements to arbitrate is favored. And other courts to consider the question have concluded that public policy certainly does not invalidate one and not the other. *In re Prudential*, 148 S.W.3d at 131 ("Public policy that permits parties to waive trial altogether surely does not forbid waiver of trial by jury."); *Chase Comm. Corp. v. Owen*, 588 N.E.2d 705, 709 (Mass. App. Ct. 1992) ("Such agreements, calling for deprivations less severe than agreements to arbitrate, cannot be said to be unconscionable or against public policy.").

Mr. Poole accordingly does not argue that pre-dispute contractual waiver violates Tennessee public policy. His argument instead focuses on the alleged inconsistency between pre-dispute waiver and the Tennessee Rules of Civil Procedure. Mr. Poole submits that Rule 39.01 of the Tennessee Rules of Civil Procedure does not provide for and, ergo, does not permit pre-dispute contractual jury waiver. Rule 39.01 states:

When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (a) the parties or their attorneys of record, by written stipulation filed with the court or by oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (b) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist *under the Constitution or statutes of the State of Tennessee.*

Tenn. R. Civ. P. 39.01 (emphasis added). It is the appellant's position that pre-dispute contractual waiver does not arise under our constitution or statutes. He contends that pre-dispute contractual waiver is only enforceable, if at all, as an affirmative defense under Rule 8.03 of the Tennessee Rules of Civil Procedure. At least one scholar has advocated a similar interpretation of the Federal Rules of Civil Procedure. *See* Jarod S. Gonzalez, *A Tale of Two Waivers: Waiver of the Jury Waiver Defense Under the Federal Rules of Civil Procedure*, 87 Neb. L. Rev. 675, 694-96 (2009).

We decline to read Rule 39.01 so narrowly. A party who has freely waived the right to trial by jury has relinquished said right; it no longer exists under our constitution. *See Mowbry v. Zumot*, 536 F. Supp. 2d 617, 622-23 (D. Md. 2008) (citations omitted) (interpreting Rule 39(a)(2) of the Federal Rules of Civil Procedure – the federal provision analogous to Rule 39.01(b) of the Tennessee Rules of Civil Procedure – to permit the assertion of pre-dispute contractual waiver of the right to trial by jury by motion). A motion to strike jury demand, therefore, is an appropriate mechanism by which to assert contractual waiver of the right to jury trial under Rule 39.01(b). *See id.* Even if Rule 39.01(b) did not govern our analysis, we are not convinced Rule 39.01(a), which presupposes a pending action, is intended to prohibit pre-dispute contractual waiver. *See Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 625-26 (Mo. 1997) (en banc) (per curiam) (permitting pre-dispute contractual waiver in addition to the types of waiver specified in the applicable procedural rules). Thus, we find no bar to the enforcement of pre-dispute contractual waiver in our procedural rules.

Implicit in our finding is a rejection of Mr. Poole's attempt to shoehorn pre-dispute contractual waiver into the category of defenses that parties must affirmatively raise in a responsive pleading under Rule 8.03. The prevailing definition of the term "affirmative defense" references "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* 451 (8th ed. 2004). Our supreme court has endorsed a similar definition, noting that "an affirmative defense is 'a traditional way for the defendant to defeat the plaintiff's claim by carrying its own burden of proof.'" *Hannan v. Alltel Publ'g Co.*, 270

S.W.3d 1, 7 n.3 (Tenn. 2008) (quoting Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping about Summary Judgment in Tennessee*, 69 Tenn. L Rev. 175, 189-90, 208 (2001)). Review of the affirmative defenses listed in Rule 8.03 reveals that every defense defeats, either in whole or in part, an opposing party's claim for relief. Waiver of the right to trial by jury, on the other hand, does not limit or hinder an opposing party's ability to recover. We conclude, therefore, that pre-dispute contractual jury waiver is not an affirmative defense that parties must raise pursuant to Rule 8.03. Although enforcement of a jury-waiver provision involves a "waiver" of a constitutional right, Rule 39.01(b) provides the appropriate mechanism by which to assert the contractual provision in response to a previously filed jury demand.

Mr. Poole argues, in the alternative, that assertion of a pre-dispute jury-waiver provision pursuant to Rule 39.01(b) must occur early enough in litigation as not to prejudice an opposing party. It is his position that the Bank, by delaying its motion to strike and entering into a scheduling order setting trial, waived its right to enforce the parties' contract. The better rule, however, permits a party seeking to strike a jury demand to file a motion up to the "eve of trial" to enforce the parties' contract. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 226-27 (3rd Cir. 2007) (citation omitted); *see also States v. Schoenborn*, 860 F.2d 1448, 1455 (8th Cir. 1988). Under such circumstances, the mere entry of a scheduling order coupled with permissible delay is insufficient to demonstrate waiver of the right to enforce a contractual jury-waiver provision. *See Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F. Supp. 2d 419, 420, 437-38 (S.D.N.Y. 2004) (granting a motion to strike after a jury trial was scheduled). We agree that similar action may amount to consent to waive a jury demand under Rule 39.01(a). *See Nagarajan*, 151 S.W.3d at 176-77 (citing *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461, 464-65 (6th Cir. 1988)) (finding the entry of an order acknowledging the placement of the case on the court's non-jury docket clear evidence of consent to waive jury demand). However, it is the opinion of this Court that the entry of a scheduling order does not manifest an intent and purpose to waive a jury-waiver provision where, as here, a party may move to strike a jury demand up to the eve of trial. Having reviewed the record, we conclude the Bank did not waive the right to enforce the provisions of the parties' contracts concerning the right to trial by jury. The trial court correctly enforced Mr. Poole's contractual jury waiver unless it is otherwise shown that he did not enter into the various agreements under circumstances supporting their enforcement.

Mr. Poole submits that, even if the Bank properly raised his pre-dispute contractual jury waiver, it did not prove that he waived his constitutional right to trial by jury knowingly, voluntarily, and intelligently. The standard applied when determining the enforceability of a jury-waiver provision is fairly uniform; most courts require a knowing, voluntary, and intelligent waiver. *See Tracinda*, 502 F.3d at 222; *Telum*, 859 F.2d at 837; *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977); *Lowe*, 40 P.3d at 410; *Gaylord*

*Dep't Stores of Ala., Inc. v. Stephens*, 404 So.2d 586, 588 (Ala. 1981). State courts, however, have declined on occasion to adopt the knowing, voluntary, and intelligent standard. *See L & R Realty*, 715 A.2d at 755 (holding that "jury trial waivers entered into in advance of litigation are enforceable where there is clear evidence of an intent to waive"); *Chase*, 588 N.E.2d at 709 (analyzing the contract as a contract of adhesion which it would enforce unless shown to be "unconscionable, contrary to public policy, or unfair in the circumstances"). This Court has applied the knowing, voluntary, and intelligent standard when addressing waiver of the fundamental right of access to the courts. *See Gottlieb*, 104 S.W.3d at 528. An argument exists, however, that courts should analyze jury-waiver provisions under the contractual analysis applicable to the provisions of an arbitration agreement. *See Buraczynski*, 919 S.W.2d at 320; *Philpot*, 279 S.W.3d at 579.

If we were to resolve this question, it would then become necessary to determine which party bears the burden of proving compliance with the prevailing standard. There is no clear consensus in state and federal courts as to which party should bear the burden of proof. *Compare Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) (placing the burden on the party seeking enforcement of a jury-waiver provision to prove knowing, voluntary, and intelligent waiver), *with K.M.C.*, 757 F.2d at 758 (placing the burden on the party challenging waiver to demonstrate a lack of knowing, voluntary, and intelligent consent), *and L & R Realty*, 715 A.2d at 755 (placing the initial burden on the party challenging a presumptively enforceable jury-waiver provision to present evidence showing it clearly did not intend to waive the right to trial by jury). Resolving these questions would require this Court to critically examine our existing case law, the constitutional provisions at play, and the safeguards necessary to protect contracting parties. The resolution of these questions, however, is unnecessary under the facts of the present case.

Case law suggests that courts apply fairly similar factors to determine whether to enforce jury-waiver provisions under the varying standards. A non-exhaustive list of factors courts have considered include the following: (1) the conspicuousness of the jury-waiver provision; (2) the parties' business acumen and experience; (3) the representation, or lack thereof, of counsel; (4) the negotiations had concerning the agreement and the waiver provision; (5) the relative bargaining power of the parties; (6) the nature of the contract; and (7) the existence of fraud, overreaching, or unconscionability. *See, e.g.*, *Allyn v. W. United Life Assurance. Co.*, 347 F. Supp. 2d. 1246, 1252 (M.D. Fla. 2004); *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1111-12 (D.C. 2002); *L & R Realty*, 715 A.2d at 755; *In re Columbia Medical Ctr. of Lewisville Subsidiary, L.P.*, 273 S.W.3d 923, 926 (Tex. App. 2009), *overruled in part by In re Bank of America, N.A.*, 278 S.W.3d 342, 346 (Tex. 2009) (per curiam); *Chase*, 588 N.E.2d at 709. Consideration of these factors on the evidence before us persuades this Court that enforcement of Mr. Poole's jury waiver is permissible under any of the prevailing standards, regardless of which party bears the burden of proof.

The evidence on appeal concerning Mr. Poole's jury waiver is primarily limited to the three contracts he entered into with the Bank. The original note, disclosure, and security agreement, which is only two pages in length, contains the following provision at the end of the third full paragraph of the second page of the agreement:

> If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of SHELBY County, the State of Tennessee. Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

This provision is not highly conspicuous; it appears in the same size font as the remainder of the agreement, falls within a larger paragraph discussing the lender's rights, is not underlined, and does not provide a separate signature line. It is, however, fairly straightforward and easy to understand. Further, the contract states on the same page:

> **PRIOR TO SIGNING THIS AGREEMENT, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I AGREE TO THE TERMS OF THE AGREEMENT AND ACKNOWLEDGE RECEIPT OF A COMPLETE COPY OF THE AGREEMENT.**

Importantly, the original jury-waiver provision is not the only contractual provision purporting to waive the right to a jury trial during litigation between these parties. Mr. Poole, upon refinancing the vehicle in 2003, signed both a promissory note and a commercial security agreement waiving his right to trial by jury. The promissory note, which is also two pages in length, states in a separately spaced provision:

> JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

A similar provision appears in the commercial security agreement:

> Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

Each of these separate agreements, similar to the original agreement, contains a capitalized,

bolded provision acknowledging the signor read and understood the contract.[6]

These acknowledgments, when considered with the relative brevity of two of the agreements, are important. It is axiomatic that a party who signs a contract is presumed to know its contents. *See Philpot*, 279 S.W.3d at 581 (Tenn. Ct. App. 2007) (citations omitted). "The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." *Id.* (citation omitted); *accord Beasley v. Metro. Life Ins. Co*, 229 S.W.2d 146, 148 (Tenn. 1950) (citations omitted); *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993) (citation omitted); *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001) (citation omitted). Mr. Poole had a duty under the law and the contracts to read and understand their provisions, which included three separate jury-waivers. Under the circumstances, we find sufficient reason to impute knowledge of the jury-waiver provisions at issue to Mr. Poole, which he has not disputed.

The Bank's presentation of three separate agreements demonstrating three separate knowledgeable decisions to waive the right to trial by jury is sufficient to uphold the trial court's ruling in light of the countervailing evidence, or lack thereof, before this Court and the arguments of counsel on appeal. Mr. Poole has not argued that the jury-waiver provisions entered into in 2003 do not apply to the present dispute. Further, there are no allegations of fraud, overreaching, or unconscionability. Mr. Poole does submit on the question of knowing, voluntary, and intelligent waiver that a gross disparity in bargaining power existed between the parties, he had no opportunity to obtain an attorney, and he had no opportunity to negotiate the provisions of the agreements. But there is no evidence cited to support these assertions and we find none in the record. Even if the Bank had the initial burden to demonstrate the enforceability of the jury-waiver provisions, we find that the presentation of three separate contracts containing jury-waiver provisions, two of which are only two pages in length, carried that burden. Because Mr. Poole has presented no evidence in rebuttal, we hold that the trial court correctly decided the Bank's motion to strike his jury demand. The decision of the trial court is affirmed.

### B. Tennessee Consumer Protect Act

Mr. Poole next challenges the involuntary dismissal of his claim under the TCPA. Rule 41.02 of the Tennessee Rules of Civil Procedure sets forth the standard governing

---

[6]The Bank's brief suggests that various portions of the jury-waiver provisions were bolded. We are unable to confirm these factual assertions based on the copies of the contracts in the record, the reproduction of which we find lacking in clarity.

-13-

involuntary dismissals.[7] Tenn. R. Civ. P. 41.02; *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007) (footnote omitted). "When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." *Britt*, 211 S.W.3d at 711 (citing *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977)). Dismissal is appropriate if, after applying the law to the facts established by a preponderance of the evidence, the plaintiff has not demonstrated a right to relief. *Id.* (citing *City of Columbia*, 557 S.W.2d at 740; *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)). On appeal, a decision to grant involuntary dismissal is reviewed under the standard found at Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Id.* (footnote omitted) (citing *Atkins*, 823 S.W.2d at 552).

Mr. Poole argues that the Bank's failure to timely provide a copy of his vehicle's transferred Tennessee certificate of title violated the TCPA. The TCPA forbids "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce. . . ." Tenn. Code Ann. § 47-18-104(a) (2001); *Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009). "A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) (footnote omitted); *accord Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997) (citing *Bisson v. Ward*, 628 A.2d 1256, 1261 (Vt. 1993); *Connor v. Merrill Lynch Realty, Inc.*, 581 N.E.2d 196, 202 (Ill. App. Ct. 1991)); *Fayne*, 301 S.W.3d at 177 (citation omitted). An unfair act or practice is one that, while not necessarily deceptive, is likely to substantially injure consumers, is not reasonably avoidable by consumers, and is not outweighed by competing benefits to the consumer market. *Tucker*, 180 S.W.3d at 116-17 (citation omitted). The determination of whether a defendant has committed unfair or deceptive acts is a question of fact. *Id.* at 116 (citing *Davidson v. General Motors Corp.*, 786 N.E.2d 845, 851 (Mass. App. Ct. 2003)); *accord Helton v. Glenn Enters., Inc.*, 209 S.W.3d 619, 629 (Tenn. Ct. App. 2006).

---

[7] Rule 41.02 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

(2) After the plaintiff, in an action tried by the court without a jury, has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; in the event judgment is rendered at the close of plaintiff's evidence, the court shall make findings of fact if requested in writing within three days after the announcement of the court's decision.

Tenn. R. Civ. P. 41.02(2).

The dispositive question here is whether the Bank, as a factual matter, engaged in any unfair or deceptive acts.[8] Having reviewed the record, we accept the testimony of Ms. Young to the extent it conflicts with Mr. Poole's description of the events leading to the harm in this case.[9] Ms. Young's testimony shows that Mr. Poole twice requested, subsequent to the original agreement, a transferred copy of title from her before she left the Bank – a far cry from the thirty to forty contacts in a single year Mr. Poole asserted. Upon each request, she attempted to retrieve a copy of the title that she believed Mr. Poole needed. Ms. Young intended to continue her efforts after she moved to the Bank's downtown branch in 2003, but she never received his file. To her knowledge, Mr. Poole's issue was not resolved when she left the company shortly thereafter. After Ms. Young left the Bank, Mr. Poole filed a Better Business Bureau complaint seeking, in part, to remedy his title situation. Several months later, he mailed a letter to the chief executive officer of the Bank complaining of the same. Only then did the Bank finally rectify the situation and provide him with a copy of transferred Tennessee title.

These facts, while constituting a breach of contract, do not demonstrate that the Bank's actions and representations were deceptive or unfair. This Court in *Tucker v. Sierra Builders*, 180 S.W.3d 109 (Tenn. Ct. App. 2005), explained that the "the essence of deception is misleading consumers by a merchant's statements, silence, or actions." *Tucker*, 180 S.W.3d at 116 (citing Jonathan Sheldon & Carolyn L. Carter, *Unfair and Deceptive Acts and Practices* § 4.2.3.1, at 118-19 (5th ed. 2001)). "'Deceptive' connotes conduct that is apt or tends to deceive." *Id.* n.10 (citing 4 The Oxford English Dictionary 328 (2d ed. 1989)). "The verb 'deceive' means 'to cause to believe what [is] false; to mislead as to a matter of

---

[8]We interpret the trial court's oral ruling as finding, as a matter of law, that Mr. Poole could not demonstrate a claim under the TCPA because the complained of acts arose subsequent to the original contract and, therefore, did not occur during trade, commerce, or a consumer transaction. Tennessee Code Annotated section 47-18-103 defines the terms trade, commerce, and consumer transaction to include "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated[.]" Tenn. Code Ann. 47-18-103(11) (2001). The trial court's interpretation would limit the protection of the TCPA to deceptive or unfair acts in the initial luring or inducement to contract – i.e., deception or unfair practices in advertising or offers to sale – or an initial distribution of goods, services, property, etc. The court's interpretation would not cover deceptive or unfair acts perpetrated during an after-arising distribution of goods, services, property, etc. pursuant to a contract. Our resolution of this appeal on a factual basis makes it unnecessary to determine whether we agree with the trial court's interpretation of the TCPA.

[9]Because the trial court did not decide whether the Bank's failure to transfer title to Mr. Poole was unfair or deceptive as a factual matter, our review is *de novo*. Tenn. R. App. P. 13(d). The court did find that the Bank's representations regarding the transfer of title did not induce Mr. Poole to enter into either the original note, disclosure, and security agreement or the subsequent refinancing agreement. We will, therefore, accord this finding a presumption of correctness. Tenn. R. App. P. 13(d). The court did not make any determinations as to credibility, either explicit or implied.

-15-

fact, lead into error, impose upon, delude, 'take in.'" *Id.* n.10 (quoting 4 The Oxford English Dictionary 324 (2d ed. 1989). Ms. Young's testimony demonstrates that her representations to Mr. Poole did not mislead him. The Bank acted on each of Mr. Poole's requests for a copy of the vehicle's Tennessee certificate of title. On at least three occasions, Ms. Young assured Mr. Poole that the Bank would take care of the matter and she attempted to do so. The Bank did not deceive Mr. Poole; it simply failed to meet its end of the bargain in a timely fashion.

The closer question concerns whether the Bank acted unfairly. "The concept of unfairness is even broader than the concept of deceptiveness, and it applies to various abusive business practices that are not necessarily deceptive." *Tucker*, 180 S.W.3d at 116 (citing Sheldon & Carter, *supra*, § 4.3.3.1, at 156). We hesitate to read the bar against unfair acts as an all-encompassing prohibition against every act that ultimately harms a consumer. The concept of unfairness, though broad, is not intended to embrace every factual scenario giving rise to a breach of contract. *See Hall v. Hamblen*, No. M2002-00562-COA-R3-CV, 2004 WL 1838180, at *4 (Tenn. Ct. App. Aug. 16, 2004); *Hamer v. Harris*, No. M2002-00220-COA-R3-CV, 2002 WL 31469213, at *1 (Tenn. Ct. App. Nov. 6, 2002). Although every breach of contract is arguably "unfair" in the colloquial sense, we have recently noted that the TCPA envisions something more than the "'simple incompetent performance of contractual duties.'" *Anderson v. Lamb's Auto Serv., Inc.*, No. W2008-01305-COA-R3-CV, 2009 WL 1076729, at *4 (Tenn. Ct. App. Mar. 5, 2009) (quoting *Capital Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991)). The Bank's incompetent failure to transfer title harmed Mr. Poole, but it was not abusive and did not rise to the level of unfair conduct that the TCPA forbids.

This Court's decision in *Fides Nzirbusa v. United Imports, Inc.*, No. M2004-01884-COA-R3-CV, 2006 WL 1716790 (Tenn. Ct. App. June 21, 2006), *perm. app. denied* (Tenn. Nov. 6, 2006), supports our analysis. In *Nzirbusa*, an automobile dealership refused to deliver unencumbered title to a car bought and fully paid for by a purchaser. *Nzirbusa*, 2006 WL 1716790, at *1. The initial owner of the dealership first stated that he would only release the vehicle's title if the purchaser, a recent political refugee from Burundi, or two referrals purchased additional vehicles. *Id.* A subsequent owner of the dealership later promised to release the title if the purchaser made an additional payment of $538. *Id.* After the purchaser made the payment, the subsequent owner refused to provide her with title, this time claiming she owed an additional $3,000 in late fees. *Id.* The purchaser ultimately filed suit after the dealership refused to endorse to her a check made payable to both the purchaser and the dealership as the lienholder of record following an accident. *Id.* After a full hearing on the merits, the trial court determined that the dealership's actions amounted to a breach of contract, as well as a violation of the TCPA. *Id.* at *5. We affirmed. *Id.* at *7.

The primary questions in *Nzirbusa* concerned whether the purchaser's claim was time-barred, whether title is property or a thing of value, and whether the TCPA applied to acts arising subsequent to the initial sale. This Court held that refusal to deliver unencumbered title was an ongoing violation of the TCPA not barred by the statute of limitations or statute of repose. *Id.* at *4. In determining the TCPA applied to the alleged acts, we stated:

> The unfair and deceptive acts complained of in this case did not occur at the time the parties entered into their contract of sale, but rather afterwards. The narrow reading of the statute urged by the dealer would of necessity exclude from the protections of the Act similar situations where unfair or deceptive acts may occur at or near the end of the installment period. An interpretation leading to that result would contravene the legislature's intent that the Act be liberally construed in furtherance of its purposes.

*Id.* at *5. Notably, we did not question whether the complained of acts were unfair or deceptive. Although we did not discuss the purchaser's breach of contract claim in great detail, we further concluded that the statute of limitations did not bar her claim and affirmed the trial court's decision. *Id.*

Our decision in *Nzirbusa* provides a prime example of when conduct constituting a breach of contract might also rise to the level of deceptive or unfair under the TCPA. The dealership deceived, misled, abused, and took advantage of a vulnerable consumer, which the court also found was a breach of the parties' contract. But the complained of acts amounted to something more than mere incompetence. As we explained, "the dealer did not simply fail to release his lien; instead, each time the buyer asked for clean title, he created additional conditions for the buyer to meet, thus holding out an illusory hope that he would eventually comply with the contract of sale." *Id.* at *4. *Nzirbusa* did not involve the simple failure to timely perform contractual duties; it involved the unfair and abusive imposition of additional conditions on the consumer. The dealership did not simply fail to promptly deliver clean title to the vehicle for some negligent reason; it intentionally deprived the purchaser of a thing of value in its possession. The facts of this case are not nearly so egregious.

In conclusion, a preponderance of the evidence does not demonstrate that the Bank engaged in any unfair or deceptive acts. We have no doubt that the TCPA extends to negligent conduct. *See Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 13 (Tenn. Ct. App. 1992). However, we are unconvinced that the complained of acts, although arguably negligent, rose to the level of conduct the TCPA forbids. It at all times behooved the Bank to properly transfer title and to take additional steps to secure its lien on Mr. Poole's vehicle. Its unintentional failure to do so ultimately harmed Mr. Poole, but its failure was not unfair or deceptive under the TCPA. Because recovery in breach of contract was the appropriate

avenue for redress, the involuntary dismissal of Mr. Poole's claim is affirmed.

## *C. Contract Damages*

Mr. Poole next contends that the trial court erred when it awarded him $6,566 in damages, which it calculated based on the monthly average net income of his business. A trial court's determination of the proper measure of damages is a question of law that we review *de novo*. *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998) (citing *Sexton v. Sevier County*, 948 S.W.2d 747, 749 (Tenn. Ct. App. 1997)). The actual calculation of damages, if the amount is within legal limits, is a question of fact. *Id.* (citing *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994); *Reagan v. Wolsieffer*, 240 S.W.2d 273, 275 (Tenn. Ct. App. 1951)). This Court will modify a trial court's award of damages based on the proper measure only if the evidence preponderates against the amount of damages awarded. *Id.* (citing Tenn. R. App. P. 13(d); *Armstrong v. Hickman County Highway Dep't*, 743 S.W.2d 189, 195 (Tenn. Ct. App. 1987)).

Mr. Poole has the duty, as the party claiming injury, to prove damages. *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999)). "Without proof of damages, there can be no award of damages." *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982) (citing *Krause v. Taylor*, 583 S.W.2d 603, 606 (Tenn. 1979)). Courts inevitably operate within a margin of error when calculating damages; we have oft recognized that such awards need not be determined with "'mathematical precision.'" *Beaty*, 15 S.W.3d at 829 (citations omitted). A party seeking damages, however, must prove damages within a reasonable degree of certainty. *Id.* (citation omitted). While mere conjecture and speculation are no basis for an award of damages, uncertain or speculative damages are prohibited only if the existence of damages is uncertain or the plaintiff has failed to present enough evidence to allow the fact-finder to fairly and reasonably assess damages. *Hatchel*, 223 S.W.3d at 229 (citations omitted).

The question here is whether the trial court employed an improper measure of damages when it assessed damages based on the average net profit of Mr. Poole's business. Mr. Poole submits that the court's award failed to adequately account for a litany of overhead expenses he incurred while he could not operate his business including, but not limited to, interest on the vehicle, depreciation, insurance, repairs and maintenance, taxes, fuel, and other miscellaneous costs. It is the appellant's position that the court should have calculated damages by subtracting expenses avoided from gross profits, which we note would also need to account for mitigating income earned. The flaw in Mr. Poole's argument is that many of

the listed overhead expenses were avoided while the business was not in operation.[10] And there is insufficient evidence in the record to demonstrate which of these expenses he continued to incur during the period in question. Had the evidence demonstrated that Mr. Poole's expenses incurred outweighed the amount of mitigating income he admittedly earned, we might have agreed that an award based on average net income would not have fully compensated him.[11] On the state of the record, however, we find no error in the court's decision. The chancellor's calculation of damages based on Mr. Poole's average net income, which was readily determinable in view of his tax returns, is a fair and reasonable assessment of the proceeds lost due to the Bank's breach of contract. The court's award of damages in the amount of $6,566 is affirmed.

## D.  *Prejudgment Interest*

As a final matter, Mr. Poole challenges the court's denial of prejudgment interest on his breach of contract claim. Trial courts are vested with considerable discretion when determining whether to award prejudgment interest. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (citing *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). Appellate courts will not disturb a decision to deny prejudgment interest unless the record demonstrates a "manifest and palpable abuse of discretion." *Id.* (citations omitted). A trial court's decision, however, does not altogether escape appellate scrutiny. *In re Estate of Ladd*, 247 S.W.3d 628, 645 (Tenn. Ct. App. 2007). Our review, while less strict, "is not synonymous with rubber stamping a trial court's decision." *Id.* A trial court's decision to deny prejudgment interest must find support in the applicable legal principles and the evidence in the record. *Id.* (citing *Scholz v. S.B. Intern., Inc.*, 40 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000)).

---

[10]Mr. Poole conceded at trial that he did not incur fuel costs during the period in question. Logic suggests that Mr. Poole likewise did not incur other out-of-pocket business expenses related to repairs and maintenance and other miscellaneous costs while the business was not in operation. Our review of the record suggests that Mr. Poole avoided a substantial majority of his business expenses while he was unable to operate. Mr. Poole, however, presented no specific testimony to demonstrate which expenses he avoided. Also, Mr. Poole provided the court with no specific indication, with the exception of his insurance expense, which expenses listed on his prior tax returns he incurred during the applicable three-month period.

[11]The formula suggested by Mr. Poole – gross receipts minus expenses avoided minus mitigating income – does not differ in result from average net income, assuming mitigating income and expenses incurred are equal. Assume, for example, a plaintiff's average monthly gross receipts are $6,000 and his average expenses are $5,000 a month. Further assume that the plaintiff will avoid $4,000 of those expenses during a period of non-operation and the plaintiff can earn $1,000 in mitigating income monthly. The plaintiff's average net income – gross receipts minus total expenses – is $1,000. The same figure is reached if one calculates damages based on gross receipts minus expenses avoided minus mitigating income.

The Tennessee Supreme Court in *Myint v. Allstate Insurance Co.*, 970 S.W.2d 920 (Tenn. 1998), articulated the standard by which courts now award prejudgment interest. *Myint* departed from prior decisions strictly limiting prejudgment interest awards to cases involving substantial certainty in the existence and amount of an underlying obligation and placed the principles of equity at the forefront of a court's decision:

> Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.

*Myint*, 970 S.W.2d at 927 (citing *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994); *Otis*, 850 S.W.2d at 446). This Court has interpreted the decision in *Myint* as effecting a sea change in the principles guiding a trial court's decision; equity and fairness, in almost all cases, now mandate full compensation for losses that the defendant caused, including economic loss stemming from the plaintiff's inability to earn interest on funds he should have received. *General Const. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist*, 107 S.W.3d 513, 526 (Tenn. Ct. App. 2007) (citing *Scholz*, 40 S.W.3d at 83).

The fact that equity and fairness will frequently require courts to award prejudgment interest does not suggest that the denial of such an award is lightly overturned on appeal. A trial court's decision is still reviewed under an abuse of discretion standard and will stand so long as it finds support in the record and the applicable equitable factors. Equitable factors relevant to a court's decision include the following: (1) promptness in the commencement of a claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, (4) the certainty of the amount in dispute, and (5) prior compensation for the lost time value of the plaintiff's money. *See Ladd*, 247 S.W.3d at 647; *Christmas Lumber Co. v. Valiga*, 99 S.W.3d 585, 596 (Tenn. Ct. App. 2002); *General Const.*, 107 S.W.3d at 526; *Scholz*, 40 S.W.3d at 83-84. Consideration of these factors in the present case leads this Court to conclude that the trial court did not abuse its discretion when it denied Mr. Poole's request for prejudgment interest.

Our review of the court's determination is constrained by the fact that the court did not offer a basis for its decision at the conclusion of trial. Mr. Poole, however, did not request findings of fact and conclusions of law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure, which no doubt would have aided our analysis.[12] At trial, the

---

[12]At the time of trial, Rule 52.01 of the Tennessee Rules of Civil Procedure obligated the trial court
(continued...)

arguments of counsel primarily concerned the existence and amount of damages in dispute, with the Bank arguing that Mr. Poole's excessive demands necessitated litigation. On appeal, Mr. Poole suggests only that an award of treble damages and/or attorney's fees under the TCPA would have approximated his original demand for relief. Mr. Poole further argues that uncertainty in the existence or the amount of an obligation does not mandate the denial of prejudgment interest. While the latter statement is true, a court is absolutely allowed to consider uncertainty in the existence or amount of a claim when determining whether to award prejudgment interest. Having reviewed the record, we are unable to conclude that the trial court abused its discretion.

## V. Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to the appellant, Gregory Poole, and his surety for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[12](...continued)
to offer findings of fact and conclusions of law only upon request. *See* Tenn. R. Civ. P. 52.01 (2008). Rule 52.01 has since been amended to remove the request requirement. It is now titled "Findings Required" and reads, in pertinent part: "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01 (effective July 1, 2009).