# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 22, 2013 Session

## ANN BELL v. JAMES DALE TRULL

### Direct Appeal from the Chancery Court for Benton County
### No. 2452      Charles C. McGinley, Judge

### No. W2013-00398-COA-R3-CV - Filed September 30, 2013

This appeal arises from Defendant's erection of barricades between Plaintiff's property and Johnson Street in Benton County, Tennessee in order to block Plaintiff's access to the street from her property. Defendant contends that Johnson Street does not extend to Plaintiff's property and that he owns the land between the two. Plaintiff contends that Johnson Street does extend to her property and that she has a right of unimpeded access to it. Plaintiff filed a complaint seeking a declaratory judgment establishing Plaintiff's right of access to Johnson Street, compensatory relief for damage caused to her land as a result of Defendant's barricades, and that punitive damages be assessed against Defendant. Following a bench trial, the trial court granted Plaintiff unimpeded access to Johnson Street, awarded her $5,100 in compensatory damages, and assessed punitive damages of $10,000 against Defendant. Defendant appealed. On appeal, we are unable to effectively review the record and must remand for further findings of fact and conclusions of law under Rule 52.01 of the Tennessee Rules of Civil Procedure.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the trial court Vacated and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Robert T. Keeton, III, Huntingdon, Tennessee, for the appellant, James Dale Trull.

George Robert Whitfield, III and W. Brown Hawley, II, Paris, Tennessee, for the appellee, Ann Bell.

## MEMORANDUM OPINION[1]

### I. Background and Procedural History

Ann Bell ("Bell") owns 3.98 acres of land in Benton County, Tennessee. Bell's home is on the southern portion of the property and is accessible from the south via Vendy Street. In 2004, Bell's daughter put a mobile home on the northern portion of the property. At that time, Bell, her daughter, and their invitees began accessing the northern portion of the property from the north via Johnson Street. They continued to access the northern portion of the property from Johnson Street until the months leading up to this lawsuit when James Dale Trull ("Trull") erected a barricade to prevent them from doing so.

The northern border of Bell's property abuts the southern borders of Trull's property and Hubert Quinn's ("Quinn") property. Trull's and Quinn's properties are located in a subdivision developed by J.C. Hedge ("Hedge subdivision"); Bell's property is not a part of the subdivision. Trull's property is separated from Quinn's property by Johnson Street, which dead ends at or just before Bell's property. Whether or not Johnson Street extends to Bell's property is the primary dispute in this case.

In 1999, residents of Hedge subdivision executed a deed purporting to convey Johnson Street to the Benton County Highway Department. Shortly thereafter, Benton County accepted Johnson Street as a county road. The deed of Johnson Street from Hedge subdivision residents to the Benton County Highway Department indicates that Johnson Street ends at Trull's driveway, leaving a gap between the street and Bell's property. Conversely, the Benton County tax map indicates that Johnson Street extends to Bell's property line.

In 2001 or 2002, Trull paved his driveway and the street in front of his driveway at his own expense ("blacktop area"). Since that time, Quinn and Trull have both used the blacktop area to access their properties. For several years leading up to the case, Bell and her family drove across the blacktop area to access the northern portion of her property. During that time, Trull was aware that they were using the blacktop area. In or around early 2011, Trull attempted to block Bell's access to Johnson Street by putting tape across the edge of

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason unrelated to the case.

the blacktop area where Bell had used it to access her land. Bell cut down the tape and continued to access her land from Johnson Street by crossing the blacktop area. Eventually, Trull blocked Bell's access to Johnson Street by driving wooden stakes deep enough into the ground at the edge of the blacktop area that Bell could not manually remove them. As a result, Bell and her invitees had to access the northern portion of her property via an alternate route and park their vehicles in an alternate location. Bell's septic tank field line ran directly below the alternate route and parking area and was damaged by the vehicles driven over it. Bell testified that neither she nor her invitees realized that the alternate route and parking area were directly above her septic tank field line.

On June 22, 2011, Bell filed a complaint against Trull in Benton County Chancery Court seeking a permanent injunction to prevent Trull from interfering with Bell's access to Johnson Street, compensation for damage done to her land as a result of Trull's actions, and punitive damages. After a bench trial on December 10, 2012, the trial court granted Bell uninterrupted access to Johnson Street, awarded her $5,100 for damages to her septic tank field line as a result of Trull's actions, and assessed $10,000 in punitive damages against Trull.

## II. Issues Presented

Trull presents the following issues, slightly restated, for our review:

(1)     Whether the trial court erred in finding that Bell should have access or an easement to Johnson Street across Trull's claimed property?

(2)     Whether the trial court erred in finding Trull responsible for damage to Bell's septic tank field lines?

(3)     Whether the trial court erred in assessing punitive damages to Trull?

## III. Standard of Review

We review the trial court's findings of fact in a bench trial *de novo* upon the record, according a presumption of correctness to them. Tenn. R. App. P. 13(d); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citations omitted). We will not disturb the trial court's factual findings unless the evidence preponderates against it. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000) (citation omitted). We review the trial court's resolution of legal questions *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citation omitted).

## IV. Analysis

The main issue in the dispute between Bell and Trull is whether Johnson Street ends at Trull's driveway or extends to Bell's property. If Johnson Street does extend to Bell's property, she has a right to use it for ingress and egress. If Johnson Street does not extend to Bell's property, the court must determine Bell's right to cross the land in between.

Trull contends that the court must rely on the 1999 deed of Johnson Street from Hedge subdivision residents to the Benton County Highway Department to determine where Johnson Street ends. That deed says that Johnson Street ends at Trull's driveway, leaving a gap between the end of the street and Bell's property, and meaning that the blacktop area in that gap is not a part of the public road. Additionally, Trull claims ownership of the blacktop area through adverse possession. He asserts that he has adversely possessed the blacktop area and the land it sits on because he has openly and notoriously maintained the area and kept others off of it since he moved into Hedge subdivision in 1985. Therefore, he argues that Bell would need an easement by necessity to cross the blacktop to get to Johnson Street, which she cannot establish because she has reasonable and practical access to her property from Vendy Street.

Bell counters this argument with a tax map of Benton County showing that Johnson Street extends south to her property line. Bell cites *City of Knoxville v. Gervin* to support her contention that because Johnson Street is a public road, its dedication for public use cannot be destroyed by an adverse possessor. *City of Knoxville v. Gervin,* 89 S.W.2d 348, 351 (Tenn. 1936). Therefore, she asserts that Trull cannot claim any ownership interest in any part of Johnson Street and that she has a right to use the street for access to and from her property. Alternatively, she argues that if the blacktop area is not part of the public road, Trull has not satisfied the exclusivity requirement for adverse possession because she and Quinn have both historically used it.

Unfortunately, the trial court made few factual findings regarding the underlying facts of the case. For example, as to the primary factual dispute of Bell's right to access Johnson Street from her property, the court's judgment only offered the broad, conclusory statement that, "she should have and/or her property should have uninterrupted or unimpeded access to and over 'Johnson Street', Camden, Tennessee, as if it was a public road which it is believed by the Court to be." However, the trial court's order did not include any findings of fact that would support its conclusion.

Effective July 1, 2009, Rule 52.01 of the Tennessee Rules of Civil Procedure was amended to require trial courts to make specific findings of facts and conclusions of law in all bench trials:

In all actions tried upon the facts without a jury, the court shall find the facts specifically and shall state separately its conclusions of law and direct the entry of the appropriate judgment. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

Tenn. R. Civ. P. 52.01. The amendment requires the trial court to make findings of fact and conclusions of law even if neither party requests them. *See Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 791 n.12 (Tenn. Ct. App. 2010). "The legislature's decision to require findings of fact and conclusions of law is 'not a mere technicality.'" *Estate of Bucy v. McElroy*, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3 (Tenn. Ct. App. Apr. 26, 2013) (quoting *Paul v. Watson*, No. W2011-00687-COA-R3-CV, 2012 WL 344705, at *5 (Tenn. Ct. App. Feb. 2, 2012)). "It serves the important purpose of 'facilitating appellate review and promoting the just and speedy resolution of appeals.'" *Id.* (quoting *Paul*, 2012 WL 344705, at *5).

In the absence of findings of fact and conclusions of law, the appellate court may be unable to effectively review the trial court's decision. *See Estate of Bucy*, 2013 WL 1798911, at *4. However, in such cases the appellate court has the discretion to "soldier on" and conduct an independent review of the record to determine where the preponderance of the evidence lies. *State v. Freeman*, 402 S.W.39 643, 650-51 (Tenn. Ct. App. 2012); *see Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). Though the trial court's oral ruling contains some additional findings and conclusions on the merits of the case, the record is insufficient to support the trial court's assessment of $10,000 in punitive damages. We therefore decline to conduct an independent review of the record in this case.

In *Hodges v. S.C. Toof & Co.*, the Tennessee Supreme Court held that punitive damages may only be awarded where the defendant has acted 1) intentionally, 2) fraudulently, 3) maliciously, or 4) recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Only after a court has determined that the defendant is liable for punitive damages by clear and convincing evidence, can it consider the amount of such damages. *Id.* When considering the amount of punitive damages to impose, the trial court must consider, to the extent relevant, at least the following:

(1) The defendant's financial affairs, financial condition, and net worth;

(2) The nature and reprehensibility of defendant's wrongdoing, for example

(A) The impact of defendant's conduct on the plaintiff, or

(B) The relationship of defendant to plaintiff;

(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5) The expense plaintiff has borne in the attempt to recover the losses;

(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;

(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Id.* at 901-02.

In non-jury trials, the trial judge's findings of fact and conclusions of law must clearly set forth the reasons for assessing punitive damages and clearly demonstrate consideration of all relevant factors. *Culbreath v. First Tennessee Bank Nat. Ass'n*, 44 S.W.3d 518, 528 (Tenn. 2001) (citing *Hodges*, 833 S.W.2d at 902). "In the absence of sufficient findings of fact and conclusions of law as to each of the relevant *Hodges* criteria, an appellate court cannot adequately review the trial court's award of punitive damages." *Id.* With those principles in mind, we consider the trial court's order of judgment assessing punitive damages against Trull.

In explaining its assessment of punitive damages against Trull, the trial court's order stated only that it found Trull's actions were "willful, intentional, and despicable." Those findings are sufficient to support the imposition of punitive damages because they indicate that Trull's actions were intentional and malicious. However, the trial court did not make sufficient findings regarding the proper amount of punitive damages. To clearly demonstrate

-6-

the consideration of all relevant factors, the trial court must explicitly refer to each of the *Hodges* factors and any other supporting factors in its findings of fact and conclusions of law regarding the amount of punitive damages. *Culbreath,* 44 S.W.3d at 529 (citing *Hodges*, 833 S.W.2d at 901). The trial court's statement that Trull's actions were "willful, intentional, and despicable" falls far short of addressing the *Hodges* factors. Additionally, the record lacked sufficient findings to guide us in an independent review of the *Hodges* factors. We therefore must vacate the award of compensatory damages and punitive damages and remand the case for findings of fact and conclusions of law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure. On remand, the trial court shall consider the record, and with respect to punitive damages, take such additional evidence as it deems necessary, and apply the *Hodges* factors to arrive at the proper amount of punitive damages.

## V.  Conclusion

The decision of the trial court is vacated and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed against Defendant/Appellant James Dale Trull and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-7-