IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 11, 2015 Session

**COLETTE SUZANNE TURMAN v. FRED TURMAN**

**Appeal from the Chancery Court for Henry County**
**No. 20745     Carma Dennis McGee, Chancellor[1]**

---

**No. W2014-01297-COA-R3-CV - Filed April 14, 2015**

---

The trial court referred this divorce case to a Special Master, indicating that the issues to be decided by the Special Master would be determined by the parties. The Special Master limited her consideration to the valuation of the parties' property. The trial court subsequently entered an order purporting to resolve all the remaining issues in the case. However, the trial court failed to make specific findings of fact and conclusions of law in its written order. Accordingly, we vacate and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON J., and KENNY ARMSTRONG, J., joined.

George Robert Whitfield, III, Paris, Tennessee, for the appellant, Colette Suzanne Turman.

Donald Capparella and Elizabeth Sitgreaves, Nashville, Tennessee for the appellee, Fred Turman.[2]

**OPINION**

---

[1] Chancellor McGee entered the final order in this case, as discussed, *infra*. However, the substantive rulings at issue in this case were made by her predecessor, Chancellor Ron E. Harmon.

[2] Mr. Turman's appellate counsel did not represent him in the trial court.

Colette Suzanne Turman ("Wife") and Fred Turman ("Husband") married in 1985. No children were born of the marriage. In 2008, Wife filed a complaint for divorce in the Henry County Chancery Court, Chancellor Ron E. Harmon presiding, alleging irreconcilable differences. Husband answered the complaint, admitting that irreconcilable differences existed, and filed a counter-complaint for divorce alleging that Wife engaged in inappropriate marital conduct and asking that he be awarded periodic alimony both *pendente lite* and permanent. Wife later amended her complaint to add an allegation that Husband had also been guilty of inappropriate marital conduct.

The parties jointly owned two rental properties. The rental properties and the marital home were sold at auction during the pendency of the divorce. The auction yielded $784,458.88. On May 10, 2010, the trial court entered an order directing the parties to reserve $150,000.00 of the auction proceeds to be determined by the trial court in the divorce proceedings. These funds were deposited with the Henry County Clerk and Master. The remaining proceeds were equally divided by the parties.

Husband purchased the marital home at auction for $183,105.20.[3] Because the parties agreed to equally divide the proceeds of the auction (less the $150,000.00 held by the clerk), Wife was entitled to one-half of the proceeds gained from the sale of the home. Husband paid this share to Wife by increasing the amount of the remaining proceeds that Wife was entitled to receive.[4] After taking into account the accumulation of interest, the Clerk and Master held $150,791.68.

On October 13, 2010, the trial court entered an order referring many of the disputes in the case to a Special Master, the Henry County Clerk and Master. The order appointing the Special Master indicated that the Special Master was to make findings regarding questions submitted by the parties. The parties subsequently submitted questions to the Special Master. The majority of the issues concerned the valuation of the parties' property and the treatment of certain assets during the pendency of the divorce.

The record indicates that the Special Master held hearings on March 23, March 30, and April 20, 2011;[5] however, no transcript is included in the record from any of the

---

[3] There is no dispute that the home sold above market value at auction.

[4] There is also no dispute that, regardless of Husband's purchase of the marital home, each party received an equal share of the auction proceeds remaining after the exclusion of the $150,000.00 held by the Clerk and Master.

[5] Neither party references hearings before the Special Master in their appellate briefs. The only indication that hearings were held is a notation to the dates of hearings on the exhibits presented to the Special Master. Accordingly, it is unclear in the record if the Special Master indeed held an evidentiary hearing, or simply decided the issues based upon the submissions of the parties. On appeal, neither party takes issue with the proceedings before the Special Master.

purported hearings before the Special Master. The Special Master filed her report on October 17, 2012.[6] The Special Master assigned values for the property at issue in the divorce and made factual findings regarding how some property was acquired or used during the marriage. For example, with regard to a personal injury suit filed jointly by the parties, the Special Master made findings with regard to the value of the suit but declined to indicate how such property should be divided in the divorce, leaving that determination to the trial court. Similarly, the Special Master considered the value in several of the parties' bank accounts and whether they were titled jointly; the Special Master, however, declined to determine whether any of the funds were marital or separate or to make a ruling as to who would be awarded what funds in the divorce. In addition, both parties submitted questions regarding dissipation of marital assets during the pendency of the divorce; the Special Master made findings regarding withdrawals made by the parties but declined to rule that such withdrawals were properly considered dissipation and offered no suggestion as to how these withdrawals would affect the division of marital property. No written objections were ever filed as to the findings of the Special Master, nor has any party raised an issue regarding the Special Master's valuations as issues on appeal.

The parties held a hearing on the issues remaining to be determined in the divorce on October 22, 2012. At the outset of the hearing, the trial court indicated that it was concurring in the report of the Special Master. The parties presented no testimony at this hearing. At the conclusion of the hearing, the trial court made some oral rulings with regard to the division of marital property. No order was subsequently entered memorializing those findings. As such, on November 12, 2012, counsel for Husband filed a motion for the trial court to make "written findings of fact and conclusions of law prior to the entry of judgment." The trial court entered an order awarding the parties an absolute divorce on March 18, 2013 but reserved all other issues. The next day, March 19, 2013, the trial court entered an order allowing each party to withdraw $15,000.00 from the funds held by the trial court. Each party withdrew these funds, leaving a balance of $120,791.68. The order allowing the withdrawals indicates that "the distribution to each party will be charged against that party's interest [a]s ultimately determined[,] with the remaining funds to continue to be held by the Clerk and Master  as previously ordered[.]"

On July 25, 2013, the trial court entered its Final Decree of Divorce. The order indicates that the trial court heard no additional proof before ruling. In this order, the trial court divided the remainder of the funds obtained at auction between the parties,[7]

---

[6]  There is no explanation in the record for the over two year delay between the order referring this matter to the Special Master and the filing of the Special Master's report.

[7] Of the approximately $150,791.68 remaining from the auction proceeds, the trial court's final decree of divorce awarded Wife $135,000.00 and Husband $12,246.79. As previously discussed, however, each party was allowed to withdraw $15,000.00 from the funds held by the Clerk and Master prior to the entry of the purported final order addressing the division of marital property.   The  trial court's order allowing

(Continued…)

3

awarded each party the personal property in his or her possession, equally divided the value of the parties' life insurance policies, and awarded Husband the value of the parties' Morgan Keegan account, as well as an aluminum car hauler and Husband's mother's jewelry. The parties were also ordered to equally divide the court costs and fees of the Special Master, which would be deducted from each party's share of the funds deposited with the Clerk and Master. Thereafter, Husband withdrew his motion for findings of fact and conclusions of law. Wife filed a timely notice of appeal. However, on March 6, 2014, this Court dismissed her appeal for lack of a final judgment, as many of the issues in the parties' divorce complaints remained unresolved by the trial court's written order. *See* **Turman v. Turman**, No. W2013-01938-COA-R3-CV, 2014 WL 887341, at *5 (Tenn. Ct. App. March 6, 2014).

On June 16, 2014, the trial court,[8] Chancellor Carma McGee presiding, entered its second Final Decree of Divorce, which resolved all outstanding issues. This order indicated that both parties withdrew any claims for alimony, that all outstanding contempt petitions were dismissed, that all property other than an aluminum car hauler and certain jewelry were properly considered marital property, that all marital debts had been paid during the pendency of the first appeal, and that each party would pay his or her own attorney's fee. From the record, it appears that many of these rulings were gleaned from the parties' and trial court's oral statements during the October 22, 2012 hearing or were based upon agreement of the parties.[9] Wife filed a second timely notice of appeal.

### Issues Presented

Wife raises the following issues, which are taken and slightly restated from her appellate brief:

1. Whether the trial court erred in calculating and allocating the funds held by the Clerk and Master?
2. Whether the trial court erred in failing to equitably divide the marital estate?

---

(…continued)
the withdrawals makes clear that these amounts would be charged against each party's ultimate award of the funds pursuant to the trial court's final division of marital property. However, the trial court allowed Husband to withdraw $15,000.00 from the funds deposited with the Special Master but only awarded Husband $12,246.79. Accordingly, Husband received $2,753.21 more than he was entitled under the terms of the final decree of divorce. Husband concedes this point in his appellate brief, and nothing in the record indicates that this error was the result of bad faith. Wife raises this alleged miscalculation as an error on appeal.

[8] The June 2014 order was entered by a different trial judge, as the original trial judge, Chancellor Harmon, passed away during the pendency of the first appeal.

[9] Neither party takes issue with any of the determinations contained in the June 16, 2014 order.

4

3. Whether the trial court erred in failing to adjust the division of the marital estate to account for Husband's misappropriation of funds?
4. Whether the trial court erred in failing to calculate rental values of the properties occupied by the parties pending the divorce in determining the value of the marital estate?

In the posture of Appellee, Husband seeks his attorney's fees incurred on appeal.

**Analysis**

This case presents an unusual factual scenario. Here, the trial court referred the case to a Special Master, as is permitted by Rule 53.01 of the Tennessee Rules of Civil Procedure. Tenn. R. Civ. P. 53.01 ("The court in which any action is pending may appoint a Special Master therein."). Unlike the typical case, however, the trial court did not refer specific issues but instead directed the parties to submit questions to the Special Master. Rule 53.02 states that the trial court "may direct the master to only report upon particular issues." In addition, Rule 53.04 indicates that the "master shall prepare a report upon the matters submitted by the order of reference." Accordingly, Rule 53 generally indicates that the trial court, in the order of reference, should set forth the issues that are to be considered and decided by the Special Master, rather than delegating this duty to the parties.

Indeed, this obligation on the part of the trial court is necessary, as the trial court has a duty to ensure that only issues that are properly referred to a Special Master are decided by the Special Master. As explained by this Court in *Vraney v. Medical Specialty Clinic, P.C.*, No. W2012-02144-COA-R3-CV, 2013 WL 4806902, at *33 (Tenn. Ct. App. Sept. 9, 2013):

> The main issues of a controversy and the principles on which these issues are to be adjudicated must be determined by the trial court. Collateral, subordinate, and incidental issues and the ascertainment of ancillary facts are matters properly referred to a [S]pecial [M]aster.

*Id.* at *34 (internal citations omitted). Consequently, "[t]he trial court . . . may not refer all matters to the [S]pecial [M]aster." *Id.*

In this case, although the trial court may have improperly delegated its duty to determine the issues to be decided by the Special Master to the parties, it appears that the Special Master limited her consideration only to valuation issues concerning the parties' marital and separate property. Specifically, while the Special Master considered the value of the property at issue, the Special Master did not go so far as to determine whether the property was properly classified as marital or separate, or to make a recommendation as to the equitable division of this property upon divorce. Other courts have indicated that

5

issues of valuation are properly referred to a Special Master. *See, e.g., **Aussenberg v. Kramer***, 944 S.W.2d 367, 370 (Tenn. Ct. App. 1996) (noting, without taking issue, that issues of valuation of partnership property were referred to the Special Master). In addition, neither party filed any written objections to the Special Master's report or otherwise raised the Special Master's valuations as issues on appeal. Accordingly, while this practice is not favored by this Court, no reversible error resulted from allowing the parties to determine the issues to be decided by the Special Master in this particular case.

Another deficiency in the record hampers appropriate appellate review, however. In this case, it does not appear that the trial court made appropriate findings of fact and conclusions of law on these issues, as required by Rule 52.01 of the Tennessee Rules of Civil Procedure. Rule 52.01 of the Tennessee Rules of Civil Procedure provides that trial courts "shall find the facts specially and state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01 (emphasis added). Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See **Poole v. Union Planters Bank N.A.***, No. W2009-01507-COA-R3-CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.* This Court has previously held that the requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009).

Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004*); **Bruce v. Bruce***, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). The Tennessee Supreme Court recently explained that Rule 52.01 findings and conclusions serve three important purposes:

> First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. *See **Estate of Bucy v. McElroy***, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3–4 (Tenn. Ct. App. Apr. 26, 2013) (noting that the Rule 52.01 requirement facilitates appellate review); *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (same); *In re K.H.*, No. W2008–01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision); *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004 (same); 9C [Charles A. Wright et al.,] *Federal Practice and Procedure* § 2571, at 219

6

[(3d ed. 2005)] [hereinafter 9C *Federal Practice and Procedure*] (recognizing that specific findings by the trial court facilitate appellate review). Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." 9C *Federal Practice and Procedure* § 2571, at 221–22. A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Id.* at 222. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal. *Hardin*, 2012 WL 6727533, at *5.

*Lovelace v. Copley*, 418 S.W.3d 1, 34–35 (Tenn. 2013). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)).

As previously discussed, the Special Master limited her consideration to the valuation of the parties' property. The trial court concurred in these findings, but, as discussed below, was required to make additional determinations regarding the equitable division of property, the dissipation of marital assets, and the benefit that Husband allegedly derived from his exclusive use of the marital home for several months during the pendency of the divorce. The trial court's written order contains no findings of fact or conclusions of law regarding these issues.[10] This omission was not corrected when the case was remanded to the trial court after Wife's first appeal was dismissed. Dissolution of a marriage requires a court to "engage in the orderly disentanglement of the parties' personal and financial affairs." *Adams v. Adams*, No. W2007-00915-COA-R3-CV, 2008 WL 2579234, at *5 (Tenn. Ct. App. June 30, 2008) (quoting *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App.1998)). As this Court explained: "[T]he absence of findings and conclusions on the nature of the property and its allocation leaves the parties without the thing they most need: a decision." *Adams*, 2008 WL 2579234, at *6-7.

Here, nothing in the trial court's order indicates that it considered the factors in Tennessee Code Annotated Section 36-4-121(c). Tennessee Code Annotated Section 36-

---

[10] The trial court did make some rulings from the bench prior to the entry of its written order. However, these rulings were not incorporated into the trial court's written order. It is well-settled that a court speaks through its written orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. 1977). Furthermore, the trial court's oral ruling offers no illumination on the application of Tennessee Code Annotated Section 36-4-121(c), Wife's dissipation argument, or Wife's argument that she is entitled to an adjustment of marital property due to Husband's exclusive use of the marital home.

4-121(c) provides several factors that the trial court "shall" consider in making an equitable division of property, including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-129(c). Tennessee courts have repeatedly held that the General Assembly's use of the word "shall" removes the court's discretion and instead indicates that the action governed by the statute is mandatory. *See, e.g.,* **Bellamy v. Cracker Barrel Old Country Store, Inc.**, 302 S.W.3d 278, 281 (Tenn. 2009) ("When 'shall' is used in a statute or rule, the requirement is mandatory."); **Bolin v. Tenn. Farmer's Mut. Ins. Co.**, 614 S.W.2d 566, 569 (Tenn.1981) ("The general rule is that the word 'shall' ordinarily is construed to be mandatory rather than merely directory."); **Stubbs v. State**, 393 S.W.2d 150, 154 (Tenn. 1965) (noting that by using the word "shall," the General Assembly "leaves no room for discretion"). Thus, the trial court was required to consider the factors outlined in Tennessee Code Annotated Section 36-4-129(c) and make appropriate findings of fact and conclusions of law to support its decision. Nothing in the trial court's order indicates that it considered Tennessee Code Annotated Section 36-4-129(c) in making its decision.

Further, as addressed by Wife's appellate brief, the trial court made no findings as to whether Wife is entitled to an adjustment of marital property due to Husband's alleged misappropriation of marital property. Indeed, the trial court had previously entered an order stating that the trial court would consider "whether or not any personal expenses . . . have been incorrectly paid for through joint business funds," and indicated that the trial court would "later determine" that issue. However, the trial court's written order contains no findings of fact or conclusions of law on this issue. In addition, the trial court's order does not contain findings of fact or conclusions of law regarding Wife's argument that she is entitled to an adjustment of marital property due to Husband's exclusive use of the marital property during the pendency of the divorce. While Husband argues that Wife is not entitled to these adjustments, the fact remains that the trial court simply did not decide these issues in its written order.

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01 is to "vacate the trial court's judgment and remand the cause to the trial court for written findings and conclusions of law." **Lake v. Haynes**, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review, despite the trial court's failure to comply with Rule 52.01, in certain limited circumstances:

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" **Hanson v. J.C. Hobbs Co., Inc.**, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov.21, 2012) (quoting **Simpson v. Fowler**, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

*Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799 (Tenn. Ct. App. Feb. 22, 2013). Here, the trial court recognized that this divorce involved "uncustomary divorce issues" that would not be easily resolved. Thus, the disputes in this case do not involve only clear legal issues.

The trial court's decision in this case is also not "readily ascertainable." *Id.* (quoting *Hanson*, 2012 WL 5873582, at *10). First, nothing in the trial court's written order or oral rulings indicates the reasoning underlying its decision to divide the parties' marital property in the way that the trial court chose, nor does the trial court even mention Wife's dissipation and adjustment arguments. Furthermore, it is unclear what evidence the trial court actually relied upon in making its determinations. As previously discussed, while the trial court was provided with a copy of the Special Master's report, and presumably the exhibits to the report, no transcript was filed with the report.

Rule 53.04 clearly sets forth both a Special Master's responsibilities, as well as the duties of the trial court, when a Special Master has been appointed to assist in a non-jury trial:

> The master shall prepare a report upon the matters submitted by the order of reference and, if required to make findings of fact and conclusions of law, the master shall set them forth in the report. The master shall file the report with the clerk of the court and, unless otherwise directed by the order of reference, **shall file with it a transcript of the proceedings** and of the evidence and the original exhibits. The clerk shall forthwith mail to all parties notice of the filing.

Tenn. R. Civ. P. 53.04(1) (emphasis added). Nothing in the trial court's order of reference relieves the Special Master of her duty to submit the transcripts and exhibits supporting her report to the trial court. The purpose of the requirement that the Special Master file a record of proceedings is so that the trial court can review any evidence taken before the Special Master and make independent findings. *Fillers v. Cash*, No. 03A01-9705-CV-00186, 1997 WL 694948 (Tenn. Ct. App. Oct. 31, 1997) (no Tenn. R. App. P. 11 application filed). The Special Master's failure to comply with Rule 53.04(1) by filing a transcript or record of the proceedings before the Special Master is harmless error if there is material evidence in the record to support the Special Master's report. *In Re Estate of Tipps*, 907 S.W.2d at 403.

In this case, no transcript was filed with the Special Master's report. Accordingly, although the parties do not dispute the Special Master's findings, it is unclear if the trial court performed an independent review of the evidence presented to the Special Master.

In addition, while the parties' counsel made arguments to the trial court at the October 22, 2012 hearing, no additional evidence was actually presented. "[M]ere statements of counsel are not evidence or a substitute for testimony." *Metro. Gov't of Nashville & Davidson Co. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977). Witnesses are required to take an oath or affirmation before testifying, and in the absence of stipulations, findings of fact must come from the evidence introduced. *In re D.M.H.*, No. W2006-00270-COA-R3-JV, 2006 WL 3216306, at *7 (Tenn. Ct. App. Nov. 8, 2006) (citing Tenn. R. Evid. 603); *see also* *State v. Thompson*, 832 S.W.2d 577, 579 (Tenn. Ct. Crim. App. 1991). Because of these deficiencies, it is difficult to discern what, if any, evidence the trial court relied upon in making its decision. Without this information, this Court would be required not only to speculate as to the trial court's reasoning, but also to assume that the trial court's decision rests on appropriately admitted evidence. This we simply cannot do.

Under these circumstances, the appropriate remedy is to remand to the trial court for the entry of an order compliant with Rule 52.01. We recognize that this case has been pending for several years, and a new trial judge will preside over the proceedings on remand. As such, an evidentiary hearing may be required to resolve the outstanding issues, which will again delay the resolution of the property issues in this divorce. However, given the fact that we cannot determine if the trial court's decision was based upon appropriate evidence, we conclude that this is the appropriate course of action in this case.

Finally, given the disposition of this appeal, we decline Husband's request for attorney's fees incurred in defense of this appeal.

### Conclusion

The judgment of the Chancery Court of Henry County is vacated, and this cause is remanded to the trial court for further proceedings in accordance with this Opinion. Costs of this appeal are taxed one-half to Appellant Colette Suzanne Turman and her surety, and one-half to Appellee Fred Turman, for all of which execution may issue, if necessary.

_____

J. STEVEN STAFFORD, JUDGE

11