IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 23, 2014 Session

**CHRISTOPHER DOUGLAS v. CARUTHERS & ASSOCIATES, INC.**

**Appeal from the Chancery Court for Shelby County**
**No. CH101858     Arnold B. Goldin, Chancellor**

**No. W2013-02676-COA-R3-CV – Filed April 24, 2015**

This case involves an employment contract. After the employee's employment was allegedly constructively terminated, he sued the employer for damages. The parties proceeded to trial, and the trial court ruled that the employer breached its employment contract with the employee and that the employee was entitled to an award of damages. The trial court then ordered that all issues of damages would be referred to a Special Master. After trial, the Special Master issued a report calculating employee's damages, to which the employee objected. Upon sustaining several of the employee's objections, the trial court again referred the matter to the Special Master. The trial court subsequently concurred in the revised findings of the Special Master, and the employer appealed, raising several issues. We vacate the ruling of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Vacated and Remanded**

ROBERT L. CHILDERS, SP.J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Gordon Ernest Jackson, Cordova, Tennessee and Fred M. Ridolphi, Jr., Memphis, Tennessee, for the appellant, Caruthers & Associates, Inc.

Edward M. Bearman, Memphis, Tennessee, for the appellee, Christopher Douglas.

**OPINION**

**Facts**

Christopher Douglas ("Douglas") began working with Caruthers & Associates, Inc. ("Caruthers & Associates" or "Appellant") in 1992. Caruthers & Associates represented clients in tax appeals arising out of disputed property tax appraisals in Shelby County. When a tax appeal was successful, the client would typically receive a refund of overpaid property taxes. In return for representing the client in a tax appeal, the client agreed to pay Caruthers & Associates a percentage of the refunded overpayment. Thus, Caruthers & Associates' business model was contingent on successful appeals of property tax appraisals.

When Douglas was first hired, he entered into a written employment contract ("original employment contract") with Caruthers & Associates. In addition to including a provision regarding Douglas's base salary, the original employment contract provided other terms of Douglas's employment, including how his bonuses and commissions would be calculated. Under the original employment contract, Douglas received a 7.5% bonus for every client, residential or commercial, that he signed with Caruthers & Associates. In addition, he received 7.5% commission for every client he personally represented before the Shelby County Board of Equalization ("County Hearing Board"). Because Douglas both recruited and represented Caruthers & Associates' residential clients before the Hearing Board, his total fee amounted to 15% of the tax refund for those residential clients. The money used to pay Douglas his bonuses and commissions came from the client's tax refund.

Until the events that precipitated this lawsuit, the way in which Douglas obtained his bonuses for successful appeals was largely unchanged. As a matter of practice, if Douglas successfully negotiated a reduction of a property appraisal before the County Hearing Board, the Trustee remitted the client's resulting tax refund, and it was placed in Caruthers & Associates' escrow account. The refund was further divided between the Caruthers & Associates' fee and the client's refund. Caruthers & Associates' portion was then placed within its own business account. To obtain his compensation, Douglas would then submit a deposit sheet indicating how much he was owed for his bonuses and commissions. Caruthers & Associates' bookkeeper, Marcy Stone, would send the deposit sheets to Caruthers & Associates President and CEO, Jerry Caruthers, who would review and approve the deposit sheets. Douglas was then paid based on the identification of his clients according to the deposit sheets he had remitted.

Until July 2009, Douglas worked under the original employment contract formed in 1992.[1] On July 1, 2009, Douglas asked Jerry Caruthers for a copy of the original employment contract and also for a raise in his salary. Jerry Caruthers agreed to Douglas's request for a

---

[1] The original employment contract does not appear in the record on appeal. As such, the facts concerning the original employment contract are elicited from the parties' testimony and the record on appeal. Douglas testified that after executing the contract, he was never provided with a copy.

raise, and he had a new Employment Agreement ("Employment Agreement") prepared, which both parties signed. The terms of the Employment Agreement regarding compensation provided Douglas with a monthly raise in his salary, but maintained the same fees for soliciting and representing clients. The Employment Agreement provides, in relevant part:

> [B]onuses or commissions are intended to be incentive for future performances, as opposed to compensation for past work, and accordingly, in the event the employment herein agreed to is terminated for any reason, Employee does hereby waive any right to receive such bonuses or commissions which have not been paid as of the time of such termination.

> ***

> Any prior dated agreements for employment or compensation between Employee and Employer, whether written or oral, are hereby terminated and cancelled and any claims for compensation, damages, losses, or otherwise from any reason or cause whatsoever which may arise from any employment by Employee and Employer prior to the date of this Agreement are hereby waived and forfeited by both Employee and Employer.

> ***

> It is agreed and understood that this Agreement is an agreement at will with no specific term and Employer or Employee may, regardless of the stated manner or date of payment of compensation, terminate this agreement at any time for any reason without cause or notice. In the event this agreement is terminated at any time for any reason by Employer or Employee, all commissions and bonuses from fees as yet not received by Employer and to which Employee may have been entitled to receive, shall be forfeited by Employee . . .

Pursuant to the parties' new Employment Contract, Douglas continued to submit his deposit sheets in the same manner that the parties had been operating under prior to the execution of the new contract. Jerry Caruthers generally approved the deposit sheets and, Caruthers & Associates paid Douglas as it had under the original employment contract. However, on July

3

29, 2010, Jerry Caruthers died. Jerry Caruthers' son, Taylor Caruthers,[2] then assumed his father's position as CEO and President.

Upon review of Caruthers & Associates' Employment Agreement with Douglas, Taylor Caruthers, as the new CEO and President, allegedly became concerned that Douglas was not a licensed appraiser or a registered agent with the State Board. On August 16, 2010, Taylor Caruthers delivered a memorandum ("2010 Memorandum") to Douglas. Since Douglas's job involved the presentation of property values, Taylor Caruthers, in the 2010 Memorandum informed Douglas that he needed to become licensed as an appraiser of property or a registered agent. Taylor Caruthers' 2010 Memorandum to Douglas provided, in relevant part:

> This is in regard to your Employment Agreement dated July 1, 2009. A few items you need to be aware of regarding this agreement going forward as follows:
>
> Regarding your employment as appearing before the Shelby County Board of Equalization (Hearing Officer) or any other Board where the appraisal or valuation of property is concerned is hereby terminated. You are neither a Registered Agent or a Licensed Real Estate Appraiser as required by law under the Tennessee Code 62-39-103 and 67-5-1514[]. Therefore, before you will be allowed to appear before any Board of Equalization you must first obtain an Appraisal License or become a Registered Agent. [Caruthers & Associates] will not accept any responsibility for not following this law going forward.
>
> Furthermore, your employee agreement is effective July 1, 2009. Please do not consider past clients as part of any Bonus income. I have enclosed a copy of all new Client's [sic] you signed up for the 2009 reappraisal. Please only Bill on the attached clients. You recently were paid on past Client's [sic] which was a mistake on my part and am debating on how to handle such and will make a decision on this matter soon.

Taylor Caruthers placed this memorandum in Douglas's office. Douglas found the

---

[2] Douglas sued Caruthers & Associates, Inc. and Taylor Caruthers in his individual capacity. However, the trial court dismissed Taylor Caruthers, individually, after Douglas's proof at the January 2012 hearing. Douglas does not raise the dismissal of Taylor Caruthers as an issue on appeal.

memorandum the following morning and asked Ms. Stone if she knew anything about the memorandum. She replied she was unaware of it. Douglas then proceeded to clean out his office, including several boxes of Caruthers & Associates' client files, and return his office keys to Ms. Stone. Douglas had no communication, other than a letter sent by his attorney, with Taylor Caruthers regarding the 2010 Memorandum until he filed this suit on October 12, 2010. Eventually, at trial, Taylor Caruthers conceded that the law does not require Douglas to be licensed or registered before representing clients before the County Hearing Board.

Douglas filed a complaint for damages against Caruthers & Associates on October 12, 2010, alleging breach of contract and tortious interference with business relations. In addition to his claim for compensatory damages, Douglas also requested punitive damages and a declaratory judgment. Douglas asserts that, given the timing of Douglas's termination, Caruthers & Associates has collected fees stemming from the services Douglas provided to certain clients. In fact, within thirty (30) days after Taylor Caruthers sent the 2010 Memorandum to Douglas, Caruthers & Associates had allegedly already received approximately $270,000.00 in fees, a portion of which Douglas claims he is entitled to receive as commissions on past work.

The trial court, sitting without a jury, initially heard proof on the issue of liability on January 17 and 18, 2012.[3] Several witnesses testified before the trial court, including Douglas himself; Stephen Branim, an appraiser at the Shelby County Assessor of Property office; Caroline Caruthers, the wife and former owner[4] of Caruthers & Associates; Marcy Stone, the bookkeeper at Caruthers & Associates; and Taylor Caruthers, CEO and President of Caruthers & Associates.

At the end of Douglas's proof, Caruthers & Associates moved for a directed verdict.[5] Caruthers & Associates argued that Douglas had not been terminated, but instead he had quit, and as such, was not entitled to any further compensation pursuant to the terms of the Employment Agreement. At this time, the trial court dismissed two of Douglas's four claims,

---

[3] Caruthers & Associates had initially brought a counter-claim against Douglas relating to the restrictive covenants in the Employment Contract. This claim was eventually dismissed.

[4] Although the exact dates are unclear from her testimony, Mrs. Caruthers owned Caruthers & Associates for a brief time after Jerry Caruthers died. Her son, Taylor Caruthers, purchased the company from her several months after Jerry Caruthers' death on July 29, 2010.

[5] "[M]otions for directed verdicts have no place in bench trials." ***Burton v. Warren Farmers Co-op.***, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). As such, Caruthers & Associates' motion is more properly termed a motion for involuntary dismissal pursuant to Rule 41.02(2) of the Tennessee Rules of Civil Procedure.

including dismissing the claims for tortious interference and punitive damages.[6]

The trial court entered an Order of Judgment on February 10, 2012 ("February Order"), which specifically incorporated its oral ruling made after trial. The trial court orally found that Douglas had been constructively terminated from his employment at Caruthers & Associates and that he was entitled to damages due to Caruthers & Associates' breach of the compensation terms of the Employment Agreement. Additionally, the trial court made oral findings regarding the waiver of certain provisions in the Employment Agreement that Caruthers & Associates argued precluded Douglas's recovery, as well as indicated that Caruthers and Associates violated the implied duty of good faith and fair dealing.[7] Regarding the calculation of Douglas's damages, the trial court's written order provides:

> Specifically, the Court finds that Douglas is entitled to 15% commissions on all of his clients that he presented appeals before the County Board of Equalization and procured a reduction for the period of July 1, 2009, the date of the new contract, and August 16, 2010, the date of the [2010] Memorandum from Taylor Caruthers to the day he left the employ of Caruthers and Associates regardless of when the refunds were received by Caruthers and Associates. In addition Douglas is entitled to receive 7.5% commissions on his clients during the same period of time on appeals presented to the County Board of Equalization by others from Caruthers which resulted in a reduction regardless of when the refund is received by Caruthers and Associates. The Court finds that the [2010] Memorandum constitutes a statement that Caruthers and Associates is no longer willing to waive the terms of the contract; therefore, after August 16, 2010, Douglas is entitled to 7.5% commissions only on his clients signed up from July 1, 2009 which appeals resulted in a reduction for the 2009 tax year.

The trial court then ordered the case be referred to a Special Master on the issue of damages.

The parties participated in a hearing before the Special Master on June 29, 2012. In its first report, the Special Master calculated Douglas's damages at $5,877.90 plus 10% interest. Douglas filed a timely objection to the Special Master's report. Accordingly, on

---

[6] Douglas does not raise the dismissal of these claims as an issue on appeal.

[7] As discussed in detail *infra*, the trial court's rulings on these issues are unclear.

April 2, 2013, the trial court entered an order ("April Order") directing the Special Master to recalculate Douglas's damages "consistent with the Court's interpretation of its orders." Although the trial court in the April Order indicates that it is merely interpreting the February Order, as discussed in detail *infra*, it actually appears that the time frame that Douglas was entitled to damages ultimately changed in the April Order. The April Order was not accompanied, nor did it incorporate by reference, any new or additional factual findings. Filed on August 6, 2013, the Special Master's second report found that Douglas's damages amounted to $45,749.58 plus 10% interest per annum. This sum was confirmed by the trial court via written order on October 28, 2013. Caruthers & Associates filed a timely notice of appeal.

## Standard of Review

Because this is an appeal from a decision made by the trial court following a bench trial, Tennessee Rule of Appellate Procedure 13(d) governs our review. For the trial court's finding of fact, we review *de novo* and presume the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P 13(d); s*ee also **Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). The presumption of correctness in Rule 13(d) applies only to facts, not conclusions of law. Accordingly, appellate courts review conclusions of law *de novo* with no presumption of correctness. ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000). For the evidence to preponderate against the trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

Here, it is also necessary to discuss the standard of review for issues referred by a trial court to a Special Master. We have previously outlined the applicable standard of review where the trial court has referred an issue to a Special Master:

> The standard of review in situations involving the findings of a [S]pecial [M]aster is set forth in Tenn.Code Ann. § 27-1-113: "Where there has been a concurrent finding of the master and chancellor, which under the principles now obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding."

***Bradley v. Bradley***, No. M2009-01234-COA-R3-CV, 2010 WL 2712533, at *6 (Tenn. Ct. App. July 8, 2010). Pursuant to this standard, concurrent findings of fact by a trial court and a Special Master are conclusive and will not be disturbed on appeal. ***Manis v. Manis***, 49 S.W.3d 295, 301 (Tenn. Ct. App. 2001). "This heightened standard of review applies only to

findings that are made by both the Special Master and the [trial court]." ***In re Estate of Ladd***, 247 S.W.3d 628, 637 (Tenn. Ct. App. 2007). Thus, "[t]he trial court's order referring certain matters to the Special Master, the Special Master's report, and the trial court's order on the report affect our standard of review on appeal." ***Bradley***, 2010 WL 2712533, at *6 (quoting ***Pruett v. Pruett***, No. E2007-00349-COA-R3-CV, 2008 WL 182236, at *4 (Tenn. Ct. App. Jan. 22, 2008); ***Dalton v. Dalton***, No. W2006-00118-COA-R3-CV, 2006 WL 3804415, at *3 (Tenn. Ct. App. Dec. 28, 2006)). Still, a concurrent finding will not be conclusive on appeal when the issue has not been properly referred to a Special Master, "where it is based upon an error of law or a mixed question of fact and law, or where it is not supported by any material evidence." ***Bradley***, 2010 WL 2712533, at *6 (citing ***Manis***, 49 S.W.3d at 301).

### Preparation of the Appellate Record and Appellate Brief Requirements

As an initial matter, we must first discuss the deficiencies in both parties' appellate briefs and in the appellate record as a whole. First, we note that the briefs of both parties lack citations to the record for factual assertions contained in their Argument sections. Caruthers & Associates' brief also lacks the required Standard of Review section. Its brief also includes argument on an issue that it fails to include in its Statement of the Issues section. Last, the record on appeal is replete with discovery and other irrelevant materials.

First, we address the lack of proper citations to the record. Rule 27 of the Tennessee Rules of Appellate Procedure provides that an appellant's brief "shall contain":

> An argument, which may be preceded by a summary of argument, setting forth:
>
> (A)    the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, **with citations to the authorities and appropriate references to the record** (which may be quoted verbatim) relied on; . . . .

Tenn. R. App. P. 27(a)(7) (emphasis added). Further, Rule 6 of the Rules of the Court of Appeals of Tennessee provides:

> (a) Written argument in regard to each issue on appeal shall contain:
>
> > (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a

8

statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) **A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.**

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. **No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.**

R. Tenn. Ct. App. 6 (emphasis added). Accordingly, no appellant may rely on factual assertions without indicating in its appellate brief where evidence of such facts may be found. The Tennessee Supreme Court has held that it will not reverse this Court for declining to consider a case on its merits where the litigants did not comply with the rules of the Court. *Bean v. Bean*, 40 S.W.3d 52, 54–55 (Tenn. Ct. App. 2000). Interestingly enough, Douglas points out that Appellant's brief fails to include proper citations to the record; however, upon review, Douglas's brief contains the same deficiency.

Next, Caruthers & Associates' appellate brief also omits a section explaining the applicable standard of review. Rule 27(a) of the Tennessee Rules of Appellate Procedure provides that the brief of the appellant "shall contain . . . for each issue, a concise statement of the applicable standard of review." This rule permits an appellant to include the applicable standard of review either under a separate heading or in the discussion section of a particular issue. Here, Caruthers & Associates makes no mention anywhere in its appellate brief of the applicable standard of review for this Court to review the substance of its appeal.

Caruthers & Associates also raises an issue in the body of its brief that was not properly raised in its Statement of the Issues section of its appellate brief. Caruthers &

Associates states, in a single footnote in its brief:

> To the extent this Court would give any more weight to a constructive termination than an outright termination or resignation, [Appellant] submits that the facts in this case do not support a "constructive termination" and, the Trial Court erred in so finding. . . . To the extent "constructive termination" is relevant or material to this case, [Appellant] submits that it did not create such intolerable working conditions for Plaintiff to cause a reasonable person to quit his job. Accordingly to the extent relevant or material to this case, the Trial Court's finding that Plaintiff was constructively terminated is contrary to Tennessee law and, constitutes reversible error.

Although it asserts the trial court's finding regarding constructive termination was in error, it omits this issue from its Statement of the Issues. Typically, when an appellant fails to designate an issue in its Statement of the Issues, the issue is deemed waived. *See* Tenn. R. App. P. 27(a)(4), (7); *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011). In its footnote, Caruthers & Associates refers generally to "Tennessee law," but fails to include any citations to authority that supports its contention. We note that the "failure of a party to cite any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006).

Next, we turn to the proper preparation of an appellate record. The party seeking appellate review has a duty to prepare a record which conveys a "fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). Rule 24 of the Tennessee Rules of Appellate Procedure additionally provides, in relevant part:

> The following papers filed in the trial court are excluded from the record: . . . (2) all papers relating to discovery, including depositions, interrogatories and answers thereto . . . requests to admit, and all notices, motions or orders relating thereto; (4) trial briefs . . . .

Despite the clear directive of Rule 24, Appellant included the following in the record on appeal, listed as they appear in the record: Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Caruthers and Associates, Responses of Caruthers & Associates, Inc. to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Scheduling Order, Defendants' Interrogatories to Special Master, Trial Brief of

Plaintiff, Defendant's Pre-Trial Brief, Plaintiff's Requests for Admissions and Interrogatories, Motion to Compel and to Deem Requests for Admissions Admitted, Defendant's Response to Plaintiff's Motion to Compel and to Deem Requests for Admissions Admitted, Plaintiff's Third Set of Interrogatories and Requests for Production of Documents to Defendant, Defendant's Interrogatories and Requests for Production of Documents to Plaintiff, Response to Defendant's Interrogatories and Requests for Production of Documents to Plaintiff, Defendant's Response to Plaintiff's Third Set of Interrogatories and Requests for Production of Documents, and Motion to Compel. The inclusion of these documents amounted to an approximate additional 135 pages of material for this Court to review. Despite Appellants' request to include the full record on appeal, these additional items clearly were unnecessary as they were never cited by Appellant in its appellate brief.

We have called attention to these deficiencies not to embarrass or berate the parties or their counsel, but to remind litigants of this Court's Rules so as to serve the interests of judicial economy and promote the expediency of appeals. Still, we exercise our discretion to review this appeal, despite the inadequacies in the parties' briefs and in the record on appeal.[8]

## Analysis

Before we address the merits of this appeal, we must first examine the trial court's order. We begin with an analysis of the language in the first order entered by the trial court. As stated above, the trial court entered its February Order after trial, providing, in relevant part:

> Specifically, **the Court finds that Douglas is entitled to 15% commission on all of his clients that he presented appeals before the County Board of Equalization and procured a reduction for the period of July 1, 2009, the date of the new contract, and August 16, 2010, the date of the Memorandum from Taylor Caruthers and the day he left the employ of Caruthers and Associates regardless of when the funds where [sic] received by Caruthers and Associates**. . . . The Court finds that the Memorandum constitutes a statement that Caruthers and Associates is no longer willing to waive the terms of the contract; therefore, after August 16, 2010, Douglas is entitled to 7.5% commissions only on his clients signed up from

---

[8] Our decision to "soldier on" in spite of these inadequacies should not be construed as an indication that waiver does not typically apply in this situation. We caution litigants that although we have continued with our review in this case, we may not be as forgiving in the future.

July 1, 2009 which appeals resulted in a reduction for 2009 tax year.

(Emphasis added.) The February Order specifically incorporated by reference the trial court's oral ruling made following trial. After ruling on liability, the trial court referred the issue of damages to the Special Master, who was directed to utilize the trial court's February Order as a method of calculating damages. Stated another way, the Special Master was required to calculate Douglas's damages arising from July 1, 2009 until August 16, 2010. The Special Master issued a report on November 5, 2012 determining that Douglas's damages totaled $5,877.90. Douglas filed his objections to the Special Master's report, arguing that the Special Master misinterpreted the trial court's ruling.

The trial court agreed with Douglas's objections, and subsequently, entered its April Order. The April Order provides, in relevant part:

[T]he Court finds as follows:

1. Douglas is entitled to **15% of any residential appeals that he presented to the board, regardless of when the funds were received by Caruthers & Associates if presented to the board before August 16, 2010**.

(Emphasis added). Thus, as demonstrated by the excerpt from the April Order, the April Order provides the Special Master with a new time frame to utilize in calculating Douglas's damages. Specifically, the Special Master was required to calculate Douglas's damages arising from *any time* before August 16, 2010. The April Order was not accompanied, nor did it incorporate by reference, any new or additional factual findings or legal conclusions. The trial court referred the issue of damages back to the Special Master "for recalculation consistent with the Court's interpretation of its orders." In its second report, filed August 6, 2013, the Special Master found that Douglas was entitled to $45,749.58 in damages. The trial court concurred in the Special Master's revised calculations.

In the instant case, the trial court's orders lack sufficient clarity, factual findings, and legal conclusions so as to appropriately facilitate appellate review. From our review, although the trial court's April Order claims to be a mere interpretation of the February Order, the February Order and the April Order differ materially in how Douglas's damages are to be calculated by the Special Master. Specifically, in the February Order, the trial court directs the Special Master to use the "period of July 1, 2009, the date of the new contract, and August 16, 2010, the date of the Memorandum from Taylor Caruthers and the day he left the employ of Caruthers and Associates" to calculate the bonuses that are owed to Douglas. On

12

the contrary, in the April Order, the trial court directs the Special Master to calculate damages using the time frame of, simply, "before August 16, 2010," and does not limit the Special Master in going further back than July 1, 2009, the date of Douglas's new Employment Agreement with Caruthers & Associates. The question as to what measure of damages to utilize reflects one of the primary disputes between the parties: whether Douglas was entitled to any bonuses for clients solicited prior to July 2009.

Thus, despite the trial court's characterization of the April Order as a clarification of the February Order, the trial court ultimately changed the substance of its ruling on a significant issue in the case. Because the case was not final at that point, the trial court retained jurisdiction and could modify its ruling any time before the order became final. As we have previously explained: "Any order or judgment of the [trial court] is subject to the control of the trial judge and may be modified or set aside by him at any time before becoming a final appealable order." *Cooper v. Tabb*, 347 S.W.3d 207, 219 (Tenn. Ct. App. 2010) (citations omitted); *see also* Tenn. R. App. P. 3(a) (stating that any order adjudicating fewer than all the claims of all the parties is not final and "is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties"). Thus, inasmuch as the trial court's February Order in this case remained interlocutory, the trial court was clearly entitled to modify the ruling.

Because the trial court's April Order was a new order, offering a different time frame by which the Special Master should calculate damages, the order must comply with Rule 52.01 of the Tennessee Rules of Civil Procedure. From our review, while the trial court's original ruling is accompanied by factual findings and legal conclusions, the April Order, from which the parties in this case actually appeal, is not accompanied by findings of fact and conclusions of law as required by Rule 52.01.

Rule 52.01 of the Tennessee Rules of Civil Procedure provides that trial courts "shall find the facts specially and state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01 (emphasis added). Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009-01507-COA-R3-CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.* This Court has previously held that the requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009).

Instead, the requirement serves the important purpose of "facilitat[ing] appellate

13

review and promot[ing] the just and speedy resolution of appeals." ***Id.***; ***White v. Moody***, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004*); **Bruce v. Bruce***, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). The Tennessee Supreme Court recently explained that Rule 52.01 findings and conclusions serve three important purposes:

> First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. *See **Estate of Bucy v. McElroy***, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3–4 (Tenn. Ct. App. Apr. 26, 2013) (noting that the Rule 52.01 requirement facilitates appellate review); ***Hardin v. Hardin***, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (same); ***In re K.H.***, No. W2008–01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision); ***In re M.E.W.***, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004 (same); 9C [Charles A. Wright et al.,] *Federal Practice and Procedure* § 2571, at 219 [(3d ed. 2005)] [hereinafter 9C *Federal Practice and Procedure*] (recognizing that specific findings by the trial court facilitate appellate review). Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." 9C *Federal Practice and Procedure* § 2571, at 221–22. A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Id.* at 222. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal. ***Hardin***, 2012 WL 6727533, at *5.

***Lovelace v. Copley***, 418 S.W.3d 1, 34–35 (Tenn. 2013). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." ***In re K.H.***, 2009 WL 1362314, at *8 (quoting ***In re M.E.W.***, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)).

Because the time frame by which the Special Master should calculate damages in the February 2012 written order was materially different than the time frame ultimately adopted

by the trial court in the April Order, the April Order is the operative order for purposes of appeal. The trial court made no findings of fact or conclusions of law in this order, nor did the trial court expressly incorporate the oral rulings made to accompany the February 2012 order into the April Order. Accordingly, the April Order clearly fails to comply with the mandates of Rule 52.01. Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01 is to "vacate the trial court's judgment and remand the cause to the trial court for written findings and conclusions of law." *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review despite the trial court's failure to comply with Rule 52.01, in certain limited circumstances:

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov.21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

*Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799 (Tenn. Ct. App. Feb. 22, 2013).

The circumstances outlined above, however, are not present in this case. First, as noted by the trial court, the legal issues in this case present several complicated questions of law that require a fact-intensive inquiry. *See id.* Second, the trial court's decision in this case is not "readily ascertainable." Here, while the trial court made no findings or legal conclusions to support the April Order, the trial court did make oral findings to support the February Order. The trial court's oral ruling, however, offers little assistance in aiding our confusion as to the trial court's reasoning regarding the dispositive issues in this case: breach of contract, waiver, breach of the implied duty of good faith and fair dealing, and the measure of damages to be utilized. Although the April Order is unaccompanied by its own new findings of facts and conclusions of law, the trial court's oral findings made in February purport to support the trial court's revised ruling concerning the time frame for the calculation of damages, as stated in the trial court's April Order. Still, the time frame concerning the calculation of damages is but one finding the trial court was required to make in this case. Regarding numerous other issues in this case, including breach of contract, breach of the implied duty of good faith and fair dealing, and waiver of certain provisions in the Employment Agreement, the lack of clear findings in the trial court's oral ruling, even if

15

appropriately considered with regard to the April Order, hinders appropriate appellate review.

As an example, we point to several excerpts of the trial court's oral ruling that are either obscure or contradictory to other parts of the ruling or the evidence presented at trial. First, the trial court found that:

> [A]s to that work that was done and those appeals that Mr. Douglas handled before the hearing officer and before the Board, that commission had been earned. That was already earned; it was just a matter of when it was coming in. So the Court finds that he's entitled to his share of his commission on those matters that he handled before the Board prior to August 16th of 2010.

In our view, this language indicates that the trial court intended that Douglas be compensated for all commissions earned during his employment, regardless of whether the clients were solicited prior to July 2009. The trial court's written February Order, however, limited Douglas's recovery of relevant commissions to those he had earned between July 1, 2009 and August 16, 2010. Thus, the trial court's oral ruling and written order conflict. The trial court apparently corrected this contradiction with its April Order, which does appear to reflect the trial court's chosen time frame by which the Special Master was directed to calculate Douglas's damages.

The trial court's oral ruling, however, contains other contradictions that are not so easily remedied. As an example, we point to one excerpt wherein the trial court appears to contradict itself concerning whether Caruthers & Associates has waived a specific provision of the Employment Agreement:

> With regard to this other bonus commission on prior matters, he would not be entitled to that because that only applied during that waiver. **That was waived by Mr. Jerry Caruthers.** The contract seems pretty clear that that's involving matters going forward but he didn't - - I believe Mr. Caruthers would be entitled to hold him to that under the contract. **It's not waived. If it's not waived then I think the contractual language would apply, but that wouldn't apply to the residential appeals that he handled.**

\*\*\*

16

> With regard to the language in the contract about going forward, there is the language in the contract about future performance and what he's entitled to and what not and the waiver, the waiver would not necessarily - - would not apply after Mr. Caruthers died, Mr. Jerry Caruthers died.
>
> I think the effect of this is Mr. Taylor Caruthers saying I'm holding you to the contract on that. I'm not going to waive - - we're not waiving that anymore. I think he talked about the mistake and I've already dealt with that. I've said that's a waiver.

(Emphasis added.) Notably, none of the trial court's findings of fact concerning waiver were included in the written order, other than by reference. However, even from the trial court's oral ruling, it is difficult to discern whether it actually found waiver and what specific provisions of the Employment Agreement were deemed waived.

Furthermore, the trial court offers a brief discussion on Douglas's constructive termination, but fails to reconcile how a constructive termination affects the enforcement of the Employment Agreement. As previously discussed, the Employment Agreement signed by Douglas in July 2009 contains a specific provision that provides that if Douglas is "terminated for any reason," he "waive[s] any right to receive such bonuses or commissions which have not been paid as of the time of such termination." Further, the Employment Agreement states that it may be terminated for any reason, upon which termination, "all commissions and bonuses from fees as yet not received by Employer and to which Employee may have been entitled to receive, shall be forfeited by Employee . . . ." The trial court's order makes little mention of this provision, except to state that at the time of the constructive termination, Douglas's commissions were already "earned." Respectfully, this meager finding is insufficient to determine whether Douglas is entitled to the commission, given the language in the contract indicating that he forfeits "all" commissions that Douglas "may have been entitled to receive." Appropriate findings of fact and conclusions of law on this issue are necessary for meaningful appellate review.

Additionally, both parties present an argument on appeal concerning a breach of the implied duty of good faith and fair dealing. In light of the trial court's ultimate finding in favor of Douglas, we assume that the trial court impliedly found that Caruthers & Associates breached the implied duty of good fair and fair dealing. The trial court's oral ruling on this issue was unclear, however, and offered no legal analysis on this issue. The trial court provided:

17

I do believe that this language in this second paragraph comes within the broad scope of the good faith and fair dealing. I don't think you can - - he can just look at this language and see his income being cut like that, what he's been doing for 17 years, and then say in addition that that under this contract language you're not going to get paid for the work that you did. I don't believe that that's what the - - I don't think that's what the law says and I don't believe that's what it will say. So the Court of Appeals - - I mean the counter-claim is dismissed and that's the damages.

Although this Court presumes the trial court is referring to the "second paragraph" of the 2010 Memorandum, nothing in that paragraph speaks to a reduction or preclusion of Douglas receiving income. While the trial court appears to have concluded that the 2010 Memorandum was an indication that Douglas's income was to be reduced significantly, which breached the duty of good faith implied in the Employment Agreement, the trial court simply offers no legal analysis or other clear indication of its reasoning on this issue.

Based on the foregoing, we have determined that the trial court's ruling was not "readily ascertainable." *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799 (Tenn. Ct. App. Feb. 22, 2013). Instead, the record offers contradictory rulings by the trial court that were not recognized by the trial court, appropriately remedied, or adequately explained. As such, we may not soldier on with appellate review in spite of the trial court's failure to comply with Rule 52.01. Upon review of the record and the trial court's orders, we must conclude that appellate review is hindered by the trial court's failure to comply with Rule 52.01. For all of the foregoing reasons, we vacate and remand to the trial court for appropriate findings of fact and conclusions of law.

### Conclusion

The judgment of the Shelby County Chancery Court is vacated and this case is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed one-half to appellant, Caruthers & Associates, Inc., and its surety, and one-half to Christopher Douglas, for which execution may issue if necessary.

_____
ROBERT L. CHILDERS, SPECIAL JUDGE